**In re FELA ASBESTOS LITIGATION.**

**Cecil S. WINGO, Sr., Plaintiff,**

v.

**NORFOLK & WESTERN RAILWAY COMPANY, et al.,**

v.

**H.K. PORTER COMPANY, INC., et al., Defendants.**

Civ. A. No. 83–0814–R.

United States District Court,
W.D. Virginia.

May 22, 1986.

---

Joseph F. Rice, Blatt & Fales, Barnwell, S.C., Ross C. Hart, Hart & Hart, Attys., Ltd., Roanoke, Va., J. Weldon Granger, Jones & Granger, Houston, Tex., for plaintiff.

Archibald Wallace III, Keene & Celotex, Sands, Anderson, Marks & Miller, Richmond, Va., for H.K. Porter and St Corp.

William B. Poff, Roanoke, Va., for Norfolk & Western Ry.

S. Lawrence Dumville, Norfolk, Va., for Nicolet.

William S. Davies, Jr., David G. Traylor, Jr., Nelson, Mullins, Grier & Scarborough, Columbia, S.C., Philip G. Gardner, Martinsville, Va., for Atlas Turner.

James A.L. Daniel, Meade, Tate & Daniel, Danville, Va., for Gen. Elec.

James C. Shannon, Duane & Shannon, Richmond, Va., for Garlock.

William T. Wilson, William T. Wilson & Associates, Covington, Va., for U.S. Gypsum.

David Craig Landin, William H. King, Jr., McGuire, Woods & Battle, Charlottesville, Va., for Westinghouse Elec. Corp.

William H. Lindsey, Claude M. Lauck, Glenn, Flippin, Feldmann, & Darby, Roanoke, Va., for Anchor Packing.

Jerry K. Jebo, Jebo & Rosenthal, Radford, Va., for E.A. Kinsey Co.

Ronald D. Hodges, Glenn M. Hodge, Wharton, Aldhizer & Weaver, Harrisonburg, Va., for Goodyear Tire & Rubber Co.

James M. McCauley, Hoyle, Corbett, Hubbard & Smith, Newport News, Va., for Raymark.

James L. Hutton, Gilmer, Sadler, Ingram, Sutherland & Hutton, Blacksburg, Va., for Koppers.

John W. Zunka, Jane P. Long, Taylor & Zunka, Ltd., Charlottesville, Va., Thomas S. Schaufelberger, Alan Klein, Alfred W. Putnam, Jr., Stuart A. Law, Jr., Drinker, Biddle, & Reath, Washington, D.C. for Uniroyal, Inc.

## MEMORANDUM OPINION

KISER, District Judge.

Before the Court is the Norfolk & Western Railway Company's ("N & W") motion for entry of judgment on its cross-claim seeking indemnity from the Celotex Corporation, Keene Corporation, and H.K. Porter Company, Inc. ("Manufacturing Defendants").[1] I believe that indemnity is appropriate under the facts of this case, therefore, I shall grant the N & W's motion.

### I. *Facts*

The original Plaintiff in this action, Cecil S. Wingo, Sr., filed suit against the N & W and the Manufacturing Defendants seeking damages for asbestos-related injuries he incurred while employed since 1942 at the N & W as a laborer, apprentice machinist, and machinist.[2] The case proceeded to trial, and a jury awarded Wingo $200,000 in his claim against the N & W.[3] The jury found that the Plaintiff's claim against the Manufacturing Defendants was barred by the statute of limitations.[4]

---

1. Several other post-trials motions are also at issue. I shall address the merits of these motions at the end of this Opinion.

2. Wingo worked as a laborer at the N & W between 1942–43. From 1943–45, he served in the United States Army. With the exception of the period between 1958–63 in which Wingo worked as a deputy sheriff, he has worked since 1945 to the present at the N & W as an apprentice machinist and machinist.

3. The total verdict was $300,000, but the jury attributed $100,000 of this amount to the Plaintiff's increased risk of cancer; by stipulation

between the N & W and the Plaintiff, the N & W is not liable for this element of damages.

4. The Plaintiff's claim against the N & W was brought pursuant to the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60, which is governed by a three-year statute of limitations. 45 U.S.C. § 56. The Plaintiff's claim against the Manufacturing Defendants, however, is governed by Virginia's two-year statute of limitations on actions for personal injuries. *Va.Code* § 8.01–243(A). Also, FELA follows the "discovery" rule and Virginia follows the "diagnosable" rule as to when a cause of action accrues.

The jury also found, however, that the Manufacturing Defendants' failure to warn the N & W of the hazards of the asbestos products they sold to the N & W breached an implied warranty of merchantability that ran with the goods. It is this breach of warranty on which the N & W bases its cross-claim for indemnity against the Manufacturing Defendants.

## II. *Indemnity*

The Manufacturing Defendants oppose the N & W's cross-claim for indemnity on two grounds. First, the manufacturers argue that the jury's answers in regard to the N & W's knowledge of the hazards of asbestos preclude as a matter of law the existence of an implied warranty of merchantability. Second, the manufacturers argue that even if an implied warranty arose, the N & W's cross-claim based on this warranty is barred by the statute of limitations contained in *Va. Code* § 8.2–725. I shall address the arguments in this order.

### A. *Existence of a Warranty*

■ Section 8.2–314 of the Virginia Code provides that an implied warranty of merchantability arises upon the sale of certain goods. *Applied in Whittle v. Timesavers,* 572 F.Supp. 584, 586 (W.D.Va.1983), *rev'd and remanded on other grounds,* 749 F.2d 1103 (4th Cir.1984). As the Manufacturing Defendants correctly point out, however, and as the N & W acknowledges, the implied warranty of merchantability which arises upon the sale of goods can be defeated if the seller of the goods can prove by a preponderance of the evidence that the

buyer's knowledge of the defective quality of the goods was extensive enough for the buyer to truly appreciate the hazards of the goods. *Goodbar v. Whitehead Brothers,* 591 F.Supp. 552, 567 (W.D.Va.1984), *aff'd, Beale v. Hardy,* 769 F.2d 213 (4th Cir.1985).[5]

In a special verdict form drafted by the Court and approved by counsel, the jury was asked to make several findings in regard to the N & W's cross-claim. First, the jury was asked whether the N & W knew of the hazards of asbestos and whether it knew of preventive measures to take to combat these hazards (Questions One and Two of Section V).[6] The jury gave affirmative answers to these questions. Second, the jury was asked whether the Manufacturing Defendants breached an implied warranty of merchantability by failing to warn the N & W of the hazards of asbestos (Question Three of Section V).[7] The jury's answer to this question was also "yes".

Although the jury's answers may appear at first inconsistent, I do not think that they are. The N & W and the Manufacturing Defendants agree that "[w]hen a special verdict form is used and the jury's findings apparently conflict, the court has a duty to harmonize the answers, if it is possible to do so under a fair reading of them." *Ladnier v. Murray,* 769 F.2d 195, 198 (4th Cir.1985), *citing, Atlantic & Gulf Stevedores v. Ellerman Lines, Ltd.,* 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962). *See also, Gallick v. Baltimore & Ohio Railroad Co.,* 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963).[8] The

---

**5.** In *Goodbar v. Whitehead Brothers,* I found that the buyer Foundry's implied warranty of merchantability was defeated (as was the Plaintiffs' derivative warranties) because of the Foundry's extensive knowledge of the harmful propensities of free silica. 591 F.Supp. 552, 567 (W.D.Va.1984).

**6.** Question One of Section V asked: "Did the N & W know of the hazard of its employees being exposed to asbestos dust?" The jury answered "yes" to this question, and they listed 1930 as "the earliest date the N & W had this knowledge." Question Two of Section V asked: "Did the N & W know of measures to prevent harmful exposure of its employees to asbestos dust

and know that such measures should be used?" The jury answered "yes" to this question, and they listed 1935 as "the earliest date the N & W had this knowledge."

**7.** Question Three of Section V asked: "Did the manufacturing Defendants' failure to warn the N & W of the hazards of asbestos render the product defective so as to breach the implied warranty of merchantability?" The jury answered "yes" to his question.

**8.** I am also aware of the fact that a new trial may be required if the answers, even after "viewed in the most generous way", are irreconcilable. *Ladnier v. Murray,* 769 F.2d 195, 198 (4th Cir.1985).

N & W and the manufacturers disagree, however, on how I should construe the answers to arrive at some consistency.

The Manufacturing Defendants suggest that I disregard the jury's response to Question Three as "superfluous and irrelevant." Accordingly, the manufacturers explain that:

> The jury's affirmative answer to question 3 constitutes nothing more than a statement that *if* there had been an implied warranty, the manufacturer's failure to warn would have constituted a breach of warranty. Since the jury's prior factual findings [regarding the N & W's knowledge] preclude the existence of such a warranty as a matter of law, the affirmative answer to question 3 cannot support entry of judgment in favor of the N & W on its Cross-Claim.

Manufacturing Defendants' Brief (filed April 4, 1986) at 6.

 I disagree with the manufacturers' construction of the jury's answers. When the jury's answer to Question Three is viewed in light of the Court's jury charge, as I am required to do, *Martin v. Swift*, 258 F.2d 797, 799 (3rd Cir.1958), it is consistent with the other answers in the special verdict form.

When I instructed the jury on the N & W's cross-claim for breach of warranty against the Manufacturing Defendants, I told the jury that it must determine: "first, was there a warranty; if so, was the product defective; and if so, was the N & W damaged by the defect." Tr. at 2820–21. I also instructed the jury on the affirmative defense raised by the manufacturers. I stated:

> The manufacturing defendants have raised the defense, the affirmative defense ... as to the cross-claim of the N & W that no implied warranty of mer-

chantability arose because the N & W had *full* knowledge of the hazards of asbestos.

Now, to establish this defense the manufacturing defendants must prove by a preponderance of the evidence *the extent of the N & W's knowledge so as to appreciate the hazards of asbestos to N & W employees.* (emphasis added) Tr. at 2821.[9]

I believe that when the jury's findings in regard to the N & W's cross-claim are viewed in light of the instructions, the findings are consistent. The jury's affirmative answers to Questions One and Two of Section V of the special verdict form no doubt suggest that the N & W had some knowledge of the hazards of asbestos; however, this had been conceded by the N & W since the outset of the trial.[10] Moreover, the major thrust of the N & W's closing argument was the distinction between *some* knowledge of the danger of asbestos and *sufficient* knowledge of the dangers as applied to railroad workers. In my view, the jury's affirmative response to Question Three should properly be interpreted as a finding by the jury that the N & W's knowledge was not sufficient to defeat the implied warranty of merchantability, thereby finding that the Manufacturing Defendants' failed to establish the affirmative defense they had raised.[11]

## B. *Statute of Limitations*

Having determined that the jury's answers to the special verdict form establish that the N & W's knowledge was insufficient to defeat the implied warranty of merchantability that ran to the N & W, I must now evaluate whether the N & W's cross-claim is barred by the statute of limitations. The manufacturers argue that the

---

9. Several pages later, I repeated this same charge to the jury. Tr. at 2827–28.

10. The jury found that the N & W's knowledge of the hazards of asbestos dates back to the 1930s, when two articles were published on the hazards of asbestos in the textile industry.

11. My determination that the jury concluded that the N & W's knowledge was not sufficient to defeat the implied warranty is reinforced by the uncontradicted evidence at trial that when the N & W had a full knowledge or appreciation of the danger of silicosis, the N & W took specific preventive measures to combat it.

four-year statute of limitations contained in *Va. Code* § 8.2–725 is controlling.

■ Section 8.2–725 provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." The statute further provides that the "cause of action accrues when the breach occurs ... [and] [a] breach of warranty occurs when tender of delivery is made." Based on this statute, the manufacturers argue that the N & W's cross-claim for indemnity should have been brought within four years of the date of the manufacturers' delivery of asbestos products to the N & W, many of which deliveries date back to the 1930s, 1940s, and 1950s. The application of § 8.2–725 to the facts of this case, however, is simply inappropriate in my view.

In *Whittle v. Timesavers*, this Court held that an "implied warranty of merchantability gives rise to an implied contract of indemnity." 572 F.Supp. 584, 587 (W.D.Va. 1983), *rev'd and remanded on other grounds*, 749 F.2d 1103 (4th Cir.1984). In my view, the implied warranty of merchantability that generally arises upon the sale (or delivery) of goods and the implied contract of indemnity that flows from the warranty are distinctly different and are governed by different statutes of limitation.[12]

My determination that *Va. Code* § 8.2–725 does not govern this action for indemnity is reinforced by *Walker Manufacturing Co. v. Dickerson, Inc.* in which the United States Court of Appeals for the Fourth Circuit held that North Carolina's identical provision from the Uniform Commercial Code could not serve to time-bar an indemnity action. 619 F.2d 305, 309 (4th Cir. 1980). In *Walker*, a roofing subcontractor filed an indemnity claim against a supplier promptly after a general contractor filed suit against the subcontractor, but more than four years after the last delivery of the roofing materials. The Fourth Circuit stated that "[t]he U.C.C. was not intended to shield manufacturers of defective products from indemnity claims made by their purchasers more than four years from the date of sale by the manufacturer." *Id.*

In the event that I found § 8.2–725 to be inapplicable, the N & W has suggested that the three-year statute of limitations for implied contracts governs. *Va. Code* § 8.01–246.[13] I need not make this determination, however, because the more important issue in my view is the point of accrual of the cause of action, not the length of the statute of limitations.

■ The courts have differed in their determinations of when a cause of action accrues in indemnity actions. Some courts link accrual of the cause of action for indemnity to the *original plaintiff's* injury. *See, e.g., Rambone v. Critzer*, 548 F.Supp. 660 (W.D.Va.1982); *Smith-Moore Body Co. v. Heil Co.*, 603 F.Supp. 354 (E.D.Va.1985). Other courts attempt to link accrual of the cause of action for indemnity to the *indemnitee's* "injury". *See, e.g., Walker Manufacturing Co. v. Dickerson, Inc.*, 619 F.2d 305 (4th Cir.1980); *Jones v. Meat Packers Equipment Co.*, No. 81–871–N (E.D.Va. July 5, 1984) [Available on WESTLAW, DCTU database]. *Nationwide Mutual Insurance Co. v. Jewel Tea Co., Inc.*, 202 Va.

---

12. This view is supported by Anderson in his treatise on the U.C.C. in which he stated that:

When the plaintiff seeks to recover from the defendant manufacturer the payment which the plaintiff had made to a third person injured by the product made by the defendant, the action is one for indemnity and this is not altered by the fact that the plaintiff entitles his action as one for breach of warranty. R. Anderson, *Anderson on the Uniform Commercial Code*, § 2–314.15 at 124 (3rd ed. 1983).

13. Subsection Four of *Va. Code* § 8.01–246 requires "actions upon any unwritten contract, express or implied," to be brought within three years after the cause of action has accrued. Section 246 also contains the following proviso:

Provided that as to any action to which § 8.2–725 of the Uniform Commercial Code is applicable, that section shall be controlling except that in products liability actions for injury to person and for injury to property, other than the property subject to contract,

527, 118 S.E.2d 646 (1961).[14] I believe the latter view is the correct one.

■ Because the jury found that Wingo's action against the Manufacturing Defendants was barred by Virginia's two-year personal injury statute of limitations, the manufacturers argue that the N & W's cross-claim against them should be similarly barred. The manufacturers cite *Rambone* and *Smith-Moore Body* in support of their position. In *Rambone*, Judge Michael held that a third-party complaint for contribution was barred by the statute of limitations if the original plaintiff's cause of action against the third-party defendant was time-barred. 548 F.Supp. 660, 664 (W.D. Va.1982).

In *Smith-Moore Body*, Judge Warriner relied on *Rambone* and held that an indemnity action was barred by the statute of limitations because an action by the original plaintiff on the underlying claim would have been time-barred had it been brought at the same time the indemnity action was filed. 603 F.Supp. 354, 360 (E.D.Va.1985). Judge Warriner's decision was reinforced, he stated, by a 1983 amendment to *Va. Code* § 8.01–229 in which the Virginia General Assembly granted defendants an additional sixty (60) days after the expiration of plaintiff's cause of action in which to file third-party complaints if the plaintiff waits to file his claim within thirty (30) days of the expiration of the statute. *Id.* at 359–60.[15]

■ I would agree with Judge Warriner that § 8.01–229 probably was amended by the Virginia General Assembly in response to the *Rambone* decision. However, I would not agree that it was the intent of the General Assembly to change the rule of *National Insurance Co. v. Jewel Tea Co., Inc.,* 202 Va. 527, 118 S.E.2d 646 (1961), which had been the rule for the accrual of indemnity and contribution actions in Virginia for more than twenty years prior to the 1983 amendment. I interpret the General Assembly's action as an effort to deal specifically with the factual posture that was presented in *Rambone* and to make clear that at any time a plaintiff waits to the eleventh hour to file a lawsuit against a defendant who has a claim (whether it be contribution, indemnity, or otherwise) against a third-party defendant, then the original defendant shall have sixty (60) days in which to bring his action, notwithstanding the fact that the statute of limitations may have run against the original plaintiff. Section 8.01–229 *allows* but does not *require* a defendant to bring his indemnity action within these time limits.

The accrual of a cause of action for indemnity, therefore, is better linked to a time at which the indemnitee is injured, not the time at which the original plaintiff was injured. This view was expressed in *Walker Manufacturing* when the United States Court of Appeals for the Fourth Circuit held that a claim for indemnity based on a breach of implied warranty was not barred even though the direct action of the original plaintiff was time-barred. 619 F.2d 305, 308–09 (4th Cir.1980). *See also Jones v. Meat Packers Equipment Co.,* No. 81–871–N, slip op. at 8 (E.D.Va. July 5, 1984) [Available on WESTLAW, DCTU database].

Given that a cause of action for indemnity does not arise until the indemnitee has been injured in some way, there is still some difficulty in pinpointing the exact

the limitation prescribed in § 8.01–243 shall apply.

**14.** My belief that a cause of action for indemnity does not accrue until the indemnitee has been "injured" is also supported by the following non-indemnity cases: *Caudill v. Wise Rambler, Inc.,* 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969) ("in the absence of injury or damage to a plaintiff or his property, he has no cause of action and no right of action can accrue to him"); *Locke v. Johns-Manville Corp.,* 221 Va. 951, 275 S.E.2d 900 (1981).

**15.** Subsection I of *Va.Code* § 8.01–229 provides:

When an action is commenced within a period of thirty days prior to the expiration of the limitation period for commencement thereof and the defending party or parties desire to institute an action as third-party plaintiff against one or more persons not party to the original action, the running of the period of limitation against such action shall be suspended as to such new party for a period of sixty days from the expiration of the applicable limitation period.

date on which this occurs. In *Jewel Tea,* the Virginia Supreme Court held that a cause of action for contribution does not accrue until payment is made. 202 Va. 527, 532–33, 118 S.E.2d 646, 649–50 (1961). In 1981, however, the Virginia General Assembly amended § 8.01–281 of the Code to allow third-party claims for contribution and indemnity to be based on future potential liability.[16] Thus, both Judge Michael in *Rambone,* 548 F.Supp. at 662–63, and Judge MacKenzie in *Jones,* slip op. at 4, have held that third-party plaintiffs can bring actions for contribution and indemnity even though no payments have yet been made.

■ In my view, the 1981 amendment to *Va.Code* § 8.01–281 is a procedural device for the sake of judicial economy. It just allows third-party plaintiffs to make these indemnity claims before the actual claim has technically accrued.[17]

In this case, Wingo sued the N & W in September of 1983. In March of 1984, the N & W filed, as it is permitted to do under both *Va.Code* § 8.01–281 and Federal Rule of Civil Procedure 13(g), *see supra* n. 17, its cross-claim for indemnity against the Manufacturing Defendants. Regardless of whether I apply *Va.Code* § 8.01–246's three-year statute of limitations or some other limitation period, the indemnity action was timely filed. Accordingly, I grant the N & W's motion for entry of judgment on its cross-claim and deny the Manufactur-ing Defendants' cross-motion on the cross-claim.[18]

### III. *Other Post-Trial Motions*

#### A. *Inherently Dangerous*

In Question Two of Section II of the special verdict form the jury was asked to determine whether asbestos is "an inherently dangerous substance" for purposes of establishing whether Wingo could maintain a negligence action against the Manufacturing Defendants, despite a lack of privity of contract, for pre–1962 exposures to asbestos. The jury was instructed not to answer the question, however, after it had found that Wingo's action against the manufacturers was barred by the statute of limitations. The N & W, nevertheless, has moved the Court for entry of judgment on the inherently dangerous nature of asbestos-containing products.

A ruling on this question is not necessary to the decision on the N & W's cross-claim. Therefore, I shall deny this motion.

#### B. *Motion to Set Aside the Verdict*

■ The N & W has filed a motion to set aside the jury's verdict as excessive and against the clear weight of the evidence on the grounds that the Plaintiff is allegedly not disabled, and that he has allegedly lost no wages, proven only minimal future medical expenses, and produced only minimal evidence of the Plaintiff's pain and suffering. In light of the evidence produc-

---

**16.** Subsection A of § 8.01–281 of the Virginia Code provides in full that:

—A party asserting either a claim, counter-claim, cross-claim, or third-party claim or a defense may plead alternative facts and theories of recovery against alternative parties, provided that such claims, defenses, or demands for relief so joined arise out of the same transaction or occurrence. Such claim counter-claim, cross-claim, or third-party claim may be for *contribution, indemnity,* subrogation, or contract, express or implied; it *may be based on future potential liability,* and it shall *be no defense thereto that the party asserting such claim, counterclaim, cross-claim, or third-party claim has made no payment* or otherwise discharged any claim as to him arising out of the transaction or occurrence. (emphasis added)

**17.** Federal Rule of Civil Procedure 13(g) suggests, like *Va.Code* § 8.01–281, that cross-claims for contribution or indemnity can similarly be based on future potential liability (a cross-claim against a co-party "may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant").

**18.** It is my view that the verdict only supports a judgment on the cross-claim against Celotex because there has been no finding of exposure as to any of the other Manufacturing Defendants (I directed a verdict against Celotex in Question Three of Section II of the special verdict form on the issue of product identification prior to 1962).

ed at trial that the asbestosis is progressive, I do not think that the $200,000 verdict for Wingo, who had an approximately sixteen-year life expectancy at the time of trial, *Va.Code* § 8.01–419, was unreasonable.[19] Therefore, I shall deny the motion.

### C. *Defendants' Claim for Credit Against the Verdict*

▮ Prior to the trial of this case, various Defendants settled ("settling Defendants") with the Plaintiff and paid over to him money pursuant to the settlements. Both the N & W and the Manufacturing Defendants claim credit for these payments against the verdict which was rendered by the jury. The Plaintiff agrees that the Defendants are entitled to a credit. A dispute arises among the parties as to the amount of credit the Defendants are entitled to. Plaintiff claims, and the N & W agrees, that the Defendants are entitled to only two-thirds of the amount paid over. Plaintiff reasons that the verdict is for $300,000 but because the N & W is liable to the Plaintiff for only $200,000, the credit should be only two-thirds of the amount paid by the settling Defendants. The Manufacturing Defendants, on the other hand, claim that the entire amount which has been paid to the Plaintiff in settlement should be credited against the $200,000 amount for which the N & W is liable.

This problem arises because prior to submitting the case to the jury Plaintiff and the N & W stipulated that any allocation of damages for risk of cancer by the jury would be deducted from the total jury verdict (jury valued the risk of cancer at $100,-000). In so doing, the Plaintiff and N & W agreed that in the event that the Plaintiff developed cancer at some time in the future, his cause of action for that damage would be preserved. The Manufacturing Defendants did not enter into any such agreement with the Plaintiff.

When the settling Defendants and the Plaintiff entered into settlements prior to trial, the settling Defendants simply bought their peace, and no attempt was made to allocate payment to any particular element of damage. As is the usual case, the settling Defendants paid a specific sum of money to the Plaintiff and in return received a general release and were dismissed from the lawsuit.

Although an appealing argument can be made that a portion of the settling Defendants' payments should be allocated to the risk of cancer element of damage, I do not believe that is the law. As the case has come down, the N & W is liable to the Plaintiff for $200,000 and it seems to me that this is the amount of the *claim*. If I follow the Restatement of Torts, which I think is the proper measure in a FELA case, then the *claim* must be diminished by the total amount of the payments made by the settling Defendants. *See*, Restatement (Second) of Torts § 885.[20]

I would readily accept the agreement which was reached between Plaintiff and N & W as to the ⅔–⅓ allocation of the prior payments were it not for the fact that the ultimate burden of payment is going to fall upon the Manufacturing Defendants. I do not think that the agreement between

---

**19.** I am guided in my decision by *Moore v. Chesapeake & Ohio Railway Co.,* 493 F.Supp. 1252, 1267 (S.D.W.Va.1980), *aff'd* 649 F.2d 1004 (4th Cir.1981), in which the district court, citing *West v. Richmond, Fredericksburg & Potomac Railroad Co.,* 528 F.2d 290 (4th Cir.1975), held that the jury's verdict was not "untoward, inordinate, outrageous, unreasonable, shocking to the conscious nor the product of a runaway jury, nor would it result in a miscarriage of justice."

**20.** Section 885(3) of the Restatement (Second) of Torts provides:

> A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment.

In the comments to this section, the sense is that the payment satisfied the payor's proportion of the total claim. The trick in our case is to decide what the total claim is.

Plaintiff and N & W can be honored over the objection of the Manufacturing Defendants.

The Clerk is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

### ORDER

For the reasons set forth in a Memorandum Opinion filed this date, it is hereby ADJUDGED and ORDERED that:

1. The N & W's motion for entry of judgment on its cross-claim is GRANTED. The Manufacturing Defendants' cross-motion on the cross-claim is DENIED. Within five (5) working days from the date on which this Order is filed, the N & W shall submit to the Court a memorandum together with supporting affidavits setting forth the amounts of costs and expenses for which it claims indemnity. Within five (5) working days after the N & W has filed its memorandum and affidavits, the Manufacturing Defendants shall be allowed to submit a memorandum and counter-affidavits in opposition. Soon thereafter, a hearing will be scheduled to determine the amount of the N & W's judgment for indemnity against Celotex.

2. The N & W's motion for entry of judgment on the inherently dangerous nature of asbestos-containing products is DENIED.

3. The N & W's motion to set aside the jury's verdict is DENIED.

4. The amount of the judgment as to the Plaintiff (and as to the N & W on its cross-claim) shall be reduced by the full amount of any settlements the Plaintiff entered into with other Defendants prior to trial. In five (5) working days from the date of this Order, Plaintiff shall file an affidavit setting forth the amount of money he received in settlement from Defendants who settled prior to trial.

The Clerk is directed to send a certified copy of this Order to all counsel of record.