[redacted]

**Peter E. LADNIER, Appellant,**

**v.**

**Fred Eugene MURRAY, Jr., individually and in his official capacity as Police Officer for the City of Greenbelt, Maryland; John Doe, Richard Roe, Police Officers for the City of Greenbelt, Maryland, the identity and number of whom is presently unknown to Plaintiff; William Lane, individually and in his official capacity as Police Chief of the City of Greenbelt, Maryland; and City of Greenbelt, Maryland, Appellees.**

**Peter E. LADNIER, Appellee,**

**v.**

**Fred Eugene MURRAY, Jr., individually and in his official capacity as Police Officer for the City of Greenbelt, Maryland, Appellant,**

**and**

**John Doe, Richard Roe, Police Officers for the City of Greenbelt, Maryland, the identity and number of whom is presently unknown to Plaintiff; William Lane, individually and in his official capacity as Police Chief of the City of Greenbelt, Maryland; and City of Greenbelt, Maryland, Defendants.**

**Nos. 83-6668(L), 83-6669.**

United States Court of Appeals,
Fourth Circuit.

Argued March 5, 1985.

Decided July 31, 1985.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Arthur G. House, Bethesda, Md. (Hadley & House, David H. Martin, Norris C. Ram-

sey, P.A., Baltimore, Md., on brief) for appellant.

William J. Kobokovich, Jr., Baltimore, Md., Kenneth S. Watson, Upper Marlboro, Md. (George L. Huber, Jr., Huber, Lutche & Wilson, Baltimore, Md., Benjamin R. Wolman, Wolman, Gushee & Newman, Upper Marlboro, Md., Albert J. Matricciani, Jr., Clapp, Somerville, Honemann & Beach, Baltimore, Md., on brief) for appellee.

Before WINTER, Chief Judge, and SPROUSE and WILKINSON, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

Plaintiff Peter Ladnier sued Fred Murray, a Greenbelt, Maryland police officer; William Lane, Greenbelt's Chief of Police; and the City of Greenbelt. He alleged a civil rights violation under 42 U.S.C. § 1983 and further alleged the Maryland common law torts of negligence, assault, and battery. The suit arose from an incident in which a police car defendant Murray was driving struck a motorcycle plaintiff was riding. Murray then arrested plaintiff, and allegedly kicked, stomped, and handcuffed him with excessive force.

The case was tried to a jury, which returned a special verdict—"a special written finding upon each issue of fact." Fed.R. Civ.P. 49(a). The jury found that Murray had applied physical force to plaintiff "that was so disproportionate to the need presented as to be shocking to the conscience," and that plaintiff was injured as a result. The jury also found that Murray assaulted plaintiff and that Murray's application of force to plaintiff was not reasonably necessary to preserve the peace, maintain order, or overcome plaintiff's resistance to Murray's authority. The jury further found, however, that Murray did not commit a battery on plaintiff, and that Murray's use of force was not inspired by an evil purpose or malicious intent. The jury fixed compensatory damages in the

amount of $15,000 and punitive damages in the amount of $50,000.

Based upon the jury's special verdict findings, the district court gave judgment to plaintiff on the § 1983 claim for $65,-000.[1] It gave judgment to Murray on the assault claim because the jury found no malice, 572 F.Supp. 544. Both parties appeal. Plaintiff contends that he was entitled to judgment on his assault and battery claims notwithstanding the jury's finding of no malice. Murray contends that plaintiff was not entitled to judgment on his § 1983 claim because the jury found with respect to plaintiff's claim of assault that Murray had not acted maliciously and found for defendant on plaintiff's claim of battery. We conclude that the jury's answers to the special verdict questions are irreconcilably contradictory, and that consequently the judgment against Murray must be reversed and a new trial ordered.

Following entry of judgment on the merits, plaintiff sought an award of counsel fees under 42 U.S.C. § 1988. The district court sharply reduced the amount requested, and plaintiff appeals. Because we reverse the underlying judgment, it cannot now be said whether plaintiff is a "prevailing" party. We therefore vacate the award.

I.

The evidence of what transpired before plaintiff's arrest in the early morning hours of August 14, 1981 was sharply in dispute. Plaintiff's version is that he was riding a friend's expensive, customized motorcycle when the engine and lights became inoperative. Once he was able to restart the engine, he decided to ride the vehicle home without lights rather than to leave it beside the road and risk its theft. While riding home, he saw the red flash of a police vehicle behind him. He accelerated to get out of the police car's path but was hit from behind.

Defendant Murray's version is that he was in hot pursuit of plaintiff's motorcycle,

---

1. The jury found for all of the other defendants, and the district court gave judgment for them.

Plaintiff does not appeal from this part of the judgment.

which was being operated in excess of the speed limit and without lights. The chase lasted for several miles and reached speeds as high as 90 miles per hour when plaintiff suddenly braked, fell over to one side of the vehicle, righted himself without stopping and then fell over to the other side. At this point Murray's vehicle ran into the motorcycle.

What transpired after the collision was also in dispute, but it is sufficient to state that plaintiff's evidence, corroborated in large part by several uninvolved civilian eyewitnesses, was that plaintiff lay on the ground on his back after being thrown from the motorcycle and cried out that his back was injured. Murray got out of the police car, ran over to plaintiff and began kicking him in the side. Despite plaintiff's cries of pain, Murray rolled plaintiff over, kicked him some more, and stomped on his back. Murray then handcuffed plaintiff, and, with the help of another officer, lifted plaintiff up behind the back by the handcuffs and placed him in the back of the police car. When plaintiff continued to complain of injury, Murray and the other officer took plaintiff out of the police car and lowered him to the ground, dropping him the last several inches.

Plaintiff was hospitalized for four days. He was later found not guilty of four of the eight charges Murray filed against him, and the other four eventually were dismissed. There was evidence that Murray had had several disciplinary actions taken against him for accidents involving police vehicles and for the use of excessive force against a person in police custody.

The jury answered the pertinent special verdict questions as follows:[2]

# 6—Did Officer Murray apply physical force to Peter Ladnier that was so disproportionate to the need presented as to be shocking to the conscience?

Yes _X_ No ___

If your answer is yes, proceed to # 7. If your answer is no, please notify the Bailiff and return your verdict.

# 7—Did Officer Murray's use of physical force cause injuries to Peter Ladnier?

YES _X_ NO ___

If your answer is yes, proceed to # 8. If your answer is no, proceed to # 12.

# 12—Did Officer Murray commit an "assault" on Peter Ladnier which caused Peter Ladnier to sustain injuries?

YES _X_ NO ___

Proceed to # 13

# 13—Did Officer Murray commit a "battery" on Peter Ladnier which caused Peter Ladnier to sustain injuries?

YES ___ NO _X_

Proceed to # 14.

# 14—Was Officer Murray's use of force or threatened use of force on Peter Ladnier reasonably necessary to preserve the peace, maintain order or overcome resistance to his authority?

YES ___ NO _X_

Proceed to # 15.

# 15—Was Officer Murray's use of force or threatened use of force on Peter Ladnier inspired by an evil purpose or malicious intent?

YES ___ NO _X_

Proceed to # 16.

# 16—If you answered 7, 12 or 13 yes, regardless of your answers to any other questions, in what amount do you assess damages for injuries that Peter Ladnier suffered as a result of the events subsequent to the collision?

$15,000.00

Proceed to # 17.

# 17—If you answered 7, 12 or 13 yes, regardless of your answers to any other questions, in what amount, if any, do you assess punitive damages against Officer Murray?

$50,000.00

---

**2.** Special verdict questions 1–5 related to the collision between the two vehicles. The jury found that Murray's negligence caused the accident but that plaintiff was contributorily negligent. Questions 8–11 dealt with the liability of the City of Greenbelt and Police Chief Lane. The jury's answers found no liability on their part. Since judgment for the defendants on these aspects of plaintiff's suit was not appealed, we need not consider them.

After the jury returned its verdict, neither party requested that the jury be instructed to deliberate further to resolve apparent inconsistencies in its answers.[3] Four days later, plaintiff moved for the entry of judgment in his favor. The district court gave judgment to plaintiff on his § 1983 claim for damages in the amount assessed by the jury. It gave judgment for Murray on the assault and battery claims. In a written opinion, the district court set forth its reasons for the action it took. It ruled that judgment for Murray must be entered with regard to plaintiff's assault claim, because under Maryland law police officers are immune from liability unless they act with malice. *See Cox v. Prince George's County,* 296 Md. 162, 460 A.2d 1038 (1983); *Bradshaw v. Prince George's County,* 284 Md. 294, 396 A.2d 255 (1979); Ann.Code of Md., Art. 23A § 1B(a). Despite the jury's finding of lack of malice with respect to the assault claim, however, the court ruled that plaintiff was entitled to judgment against Murray on plaintiff's § 1983 claim. It reasoned that implicit in the finding that Murray used force shocking to the conscience was the finding that Murray knew or should have known that his actions violated plaintiff's constitutional rights. Thus the jury's award of punitive damages was held tantamount to a finding that Murray acted with legal malice, which under *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), would render Murray not immune to damages under § 1983 for the use of excessive force. The court further noted that under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), actual malice was no longer necessary to render a public official not immune to damages in a § 1983 action if he knew or should have known that his conduct violated a plaintiff's constitutional rights.

## II.

■ When a special verdict form is used and the jury's findings apparently conflict, the court has a duty to harmonize the answers, if it is possible to do so under a fair reading of them. *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962). If, however, "viewed in the most generous way, the answers are inconsistent with each other, a new trial is ordinarily required." 9 C. Wright & A. Miller, Federal Practice and Procedure § 2510, p. 517 (1971); *Burger King Corp. v. Mason,* 710 F.2d 1480, 1489 (11 Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984); *Griffin v. Matherne,* 471 F.2d 911 (5 Cir.1973); *Ballwanz v. Isthmian Lines, Inc.,* 319 F.2d 457 (4 Cir.1963), *cert. denied,* 376 U.S. 970, 84 S.Ct. 1136, 12 L.Ed.2d 84 (1964).

We perceive at least two irreconcilable inconsistencies in the jury's special verdict. They relate to the issue of malice and the issue of Murray's use of force.

### A. Malice.

■ With regard to special verdict question 6, that relating to plaintiff's § 1983 claim, the jury was instructed:

Under federal civil rights law, it is illegal for a governmental employee, such as a police officer, to use physical force that is so disproportionate to the need presented as to literally shock the conscience of reasonable persons. In addition to determining whether the force applied by Officer Murray, if you find that he applied any force, was disproportionate to the need presented, *you should determine whether the application of force was inspired by malice or*

---

**3.** In *Skillin v. Kimball,* 643 F.2d 19 (1 Cir.1981), it was held that the failure of a party to move to have apparently conflicting special findings resubmitted to the jury for reconciliation waived the party's right to argue the inconsistency on appeal. With due respect, we are more persuaded by the contrary holding in *Mercer v. Long Mfg. N.C., Inc.,* 671 F.2d 946, 948 n. 1 (5 Cir.1982). As pointed out in *Mercer,* the legal error resulting from entry of a judgment based on inconsistent special interrogatories may be an error of constitutional magnitude, infringing the seventh amendment right to jury trial "by allowing the District Court to usurp the jury's function."

*sadism rather than a merely careless or unwise excess of zeal.* In other words, you must determine whether or not the force that was applied by Officer Murray, if any, amounted to a brutal and inhumane abuse of official power that is literally shocking to the conscience. [Emphasis added.]

With regard to question 15, that inquiring whether defendant's common law assault on plaintiff was "inspired by an evil purpose or malicious intent," the jury was told:

This question requires you to determine whether any force or threatened use of force by Officer Murray was prompted by an evil or malicious state of mind on the part of Officer Murray. Acts are inspired by an evil purpose or malicious intent if they are prompted or accompanied by ill will by spite or by grudge toward the injured person individually or toward all persons in one or more groups or categories of which the injured person is a member.

Viewed in light of the instructions given the jury regarding these two questions, *see Martin v. Swift,* 258 F.2d 797, 799 (3 Cir. 1958), we deem the jury's answers irreconcilably in conflict. The jury was told that in order to answer question 6 affirmatively, which it did, it had to find that defendant's "application of force was inspired by malice or sadism rather than a merely careless or unwise excess of zeal." [4] Yet when asked in question 15 whether Murray's use of force or threatened use of force "was prompted by an evil or malicious state of mind," the jury replied in the negative. We do not agree with the district court that this inconsistency can be resolved by an implied finding that Murray knew or should have known that his conduct violated plaintiff's constitutional rights, thereby rendering him liable under § 1983 but not under state law. Question 6 simply was not posed under instructions permitting such an implied finding.

### B. Use of Force.

In answering question 6, the jury found that Murray applied disproportionate physical force to plaintiff. Yet it found in answering question 13 that Murray did not commit a "battery" on plaintiff. With regard to question 13, the jury was instructed:

Again, the word battery is in quotation marks to emphasize that the word battery is used in its legal sense and not in the everyday use of the word. In its legal sense, battery is the intentional use of force on another person such that the other person is placed in fear of imminent bodily harm.

Under the facts of this case, we do not think it possible for a jury reasonably to find that Murray applied disproportionate force to plaintiff but that Murray did not intentionally use force on plaintiff such that plaintiff was placed in fear of imminent bodily harm. Again, there is an irreconcilable inconsistency, requiring a reversal of the judgment for plaintiff and a new trial.

For these reasons, we are constrained to reverse the judgment for plaintiff in the amount of $65,000 and direct that with regard to his claims against Murray that he have a new trial. We stress that the district court and the parties should be careful on remand to examine any further special

---

**4.** We express doubt as to the correctness of the instruction. The element of malice as a factor in determining whether the constitutional tort of using excessive force has been committed has its genesis in the opinion of Judge Friendly in *Johnson v. Glick,* 481 F.2d 1028, 1033 (2 Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). When that opinion is read closely, it does not say that actual malice must always be found in order to elevate the common law torts of assault and battery to constitutional torts. Rather, it suggests that proof of malice is a factor having that effect, although it recognizes that the elevation may occur because of proof of factors other than actual malice. Admittedly, there has not been complete consistency in what we have written on the subject. *Compare Hall v. Tawney,* 621 F.2d 607, 613 (4 Cir.1980), *with King v. Blankenship,* 636 F.2d 70, 73 (4 Cir.1980), *and Hughes v. Blankenship,* 672 F.2d 403, 406 (4 Cir.1982). We think, however, that the better view is the one we last expressed that, consistent with the view of Judge Friendly, proof of malice will elevate the common law causes of action to constitutional torts, but is not required to prove a constitutional tort.

verdict answers for inconsistencies before the jury is discharged. *See Mercer,* 671 F.2d at 947.

### III.

 After entering judgment for plaintiff on the § 1983 claim, the district court granted in part plaintiff's petition for attorney's fees filed pursuant to 42 U.S.C. § 1988. That statute authorizes an award to a "prevailing party" who has sued, *inter alia,* under 42 U.S.C. § 1983. Since we conclude that plaintiff's § 1983 judgment must be reversed, he is no longer at this stage a "prevailing party", and it follows that the award of attorney's fees must be vacated. We therefore do not decide plaintiff's contention that the award was inadequate. We caution, however, that if plaintiff ultimately prevails and a new award of attorney's fees is made, the district court should pay close attention to the guidelines set forth in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and *Barber v. Kimbrell's, Inc.,* 577 F.2d 216 (4 Cir.), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978).

REVERSED AND VACATED; NEW TRIAL GRANTED.