Sammy CARTER and James
Cox, Appellants,

v.

Jasper Greg ROGERS, Individually & in his capacity as the Sheriff of Dillon County; Billy Wayne Gaine, Individually & as a Deputy Sheriff of Dillon County; Andrew Graves, Indiv. & as a Deputy Sheriff of Dillon County; James Washington, Indiv. & as Deputy Sheriff of Dillon County; L.C. Richardson, Indiv. & in his cap. as the Sheriff of Marion County; Ann Earl Davis, As Admin. of the Estate of Gary Davis; V.D. Turbeville, Ind. & as a Deputy Sheriff of Marion County; United States Fidelity & Guaranty Co. & American Insurance Co., Defendants.

and

Bobby McClain, Individually & as a Deputy Sheriff of Dillon County; L.G. Winkler, Ind. and as a Deputy Sheriff of Marion County; Donald Ray Hayes, Ind. and as a Deputy Sheriff of Marion County; Richard McArthur and Katrina Carter, Appellees.

No. 85–1915.

United States Court of Appeals,
Fourth Circuit.

Argued June 5, 1986.

Decided Nov. 26, 1986.

J. Edward Bell, III (Bell, Floyd, Belk & Jernigan, Florence, S.C., John D. Delgado, Furr & Delgado, Columbia, S.C., on brief), for appellants.

Mark W. Buyck, Jr. (Willcox, Hardee, McLeod, Buyck, Baker & Williams, Florence, S.C., on brief), and Robert L. Kilgo (Kilgo & Kilgo, Darlington, S.C., on brief), for appellees.

Before WINTER, Chief Judge, and WIDENER and CHAPMAN, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

Plaintiffs sued defendants, alleging a variety of causes of action arising out of their arrest for armed robbery and attempted armed robbery. Plaintiffs had been acquitted of the main criminal charges, though plaintiff Carter was convicted of illegal possession of a sawed-off shotgun. Among plaintiffs' alleged causes of action were claims that defendant McClain, the deputy sheriff, used excessive force in arresting plaintiff Carter in violation of his rights under federal law; that defendants Richard McArthur and Katrina Carter (no relation to plaintiff Carter) engaged in a civil conspiracy against plaintiffs in violation of state law; and that defendant McClain committed assault and battery on plaintiff Carter in violation of state law.

A jury found for McClain with respect to Carter's claim under 42 U.S.C. § 1983 for the use of excessive force. It found for plaintiff Carter on the assault and battery count against defendant McClain and awarded Carter substantial compensatory and punitive damages. It also found for both plaintiffs against Katrina Carter and McArthur on the pendant state claim of civil conspiracy and awarded each plaintiff $35,000 in compensatory damages and also awarded Carter $15,000 in punitive damages. Carter moved, *inter alia*, for a judgment n.o.v., or in the alternative for a new trial, with regard to his claim of the use of excessive force, and defendants moved for judgments n.o.v., or in the alternative for a new trial, on the causes of action for which the jury found for plaintiffs. The district court denied Carter's motion, but it granted McClain a judgment n.o.v. on the assault claim and a conditional new trial. While it denied a judgment n.o.v. on the civil conspiracy claim and expressed the view that a

new trial should be granted, it ruled that it lost pendent jurisdiction to retry this claim because it found that plaintiffs had no meritorious federal cause of action.

Plaintiffs appeal.[1] We reverse and grant Carter a new trial on the claims for use of excessive force and assault and battery against McClain. We grant both plaintiffs a new trial on their pendent civil conspiracy claim.

## I.

The facts are disputed, but, viewed in the light most favorable to plaintiffs, they present a bizarre case.

Plaintiffs were arrested under circumstances which indicated that they were engaged in the armed robbery of Mrs. Katrina Carter at a river house that she rented in the Fort Retch Community of Marion County, South Carolina, near a house rented by plaintiff Carter in the same community. The purported robbery was not a real one but was one staged by agreement between plaintiffs, Mrs. Carter and the defendant Richard McArthur. The idea to stage the robbery originated with McArthur, and its stated purpose was to convince certain drug dealers that Mrs. Carter legitimately lacked the funds to pay for a drug transaction in which she was involved and which she did not wish to complete. According to the plan, plaintiffs were to precede Mrs. Carter to her house on a designated night, and rob her of the money she would be carrying from that night's revenue at the club she operated.

In persuading plaintiffs to fake the robbery, McArthur and Mrs. Carter were in fact purposely manipulating plaintiffs into a position of apparent guilt. Mrs. Carter and McArthur had been carrying on an illicit affair for a considerable period of time. The fact of their relationship was well known to plaintiffs who were friends and acquaintances of long standing. In fact, McArthur and Mrs. Carter regularly used plaintiff Carter's house for their trysts. Plaintiffs suggest that McArthur and Mrs. Carter "set up" plaintiffs because McArthur believed that plaintiff Carter had told McArthur's wife about his affair with Mrs. Carter.

Prior to the night of the "robbery," the Sheriff of New Hanover County received an anonymous tip warning of an imminent armed robbery in the Dillon County area where Mrs. Carter's rented house was located. The Hanover County sheriff related the information to defendant McClain, the Deputy Sheriff of Dillon County who was stationed in the vicinity of Mrs. Carter's house. Indeed, McClain was subsequently told that the robbery would occur on August 14 and that plaintiff Sammy Carter and others would be involved in the robbery. As a result, a deputy accompanied Mrs. Carter that night when she returned from the club to her home, and McClain and other law enforcement officers were staked out at Mrs. Carter's house waiting for the robbery to occur.

Plaintiffs arrived at the Carter house as a result of a telephone call from McArthur earlier in the evening that the plan to fake the robbery should be put into operation that night. All of the agreed upon precautionary signals to indicate that plaintiffs should proceed had been given. When plaintiffs arrived at Mrs. Carter's house, McClain and his assistants were already concealed on the scene. When Mrs. Carter arrived, stopped her car, and proceeded into the house, plaintiffs approached her carrying firearms. As she hit plaintiff Carter with a briefcase containing the receipts from the club, McClain and the other law enforcement officers made their presence

**1.** While the notice of appeal was filed on behalf of both plaintiffs and the briefs speak of plaintiffs in the plural, in fact the brief argues Carter's claims almost exclusively. The causes of action for use of excessive force and assault and battery were submitted to the jury solely on behalf of Carter, and Cox asserts no error in regard to this instruction. The district court granted a new trial with respect to the cause of action for civil conspiracy, the only cause of action pressed by both plaintiffs, but then held that it lacked jurisdiction to retry the pendent conspiracy claim. Although not vigorously pressed by plaintiffs, we think that they are entitled to retrial in federal court on the civil conspiracy claim since we conclude that Carter is entitled to a new trial on his federal claim.

known. It is sharply disputed whether they identified themselves as law enforcement officers. In any event, plaintiff Cox stood still but plaintiff Carter, thinking that he was being accosted by the mythical drug dealers, started to flee.

Again there is a dispute whether Carter was ordered to halt, but as he continued running McClain fired at him, hitting him in the back below the waist. Carter fell to one knee but then he tried to arise and continue to run. McClain shot a second time, breaking Carter's leg, and thereafter Carter was apprehended. There is no dispute that he suffered grievous permanent injuries as a result of the shooting.

Where it is necessary to do so, we will state other facts in connection with the contention to which they relate.

The district court submitted Carter's claims for the excessive use of force and assault and battery to the jury on special interrogatories. Its instruction on the § 1983 claim for the use of excessive force is set forth in the margin.[2] The district court instructed the jury that the four factors to be considered in deciding the claim were: (a) the need for force, (b) the relationship between the need and the amount of force that was used, (c) the extent of injury inflicted, and (d) whether force was applied in an effort to maintain or restore discipline or employed maliciously and sadistically for the very purpose of causing harm.[3] With regard to this cause of action, the jury responded in the negative to the interrogatory "Do you find that Deputy Bobby McClain used excessive force, as that term has been defined for you in the court's instructions, in effecting the arrest of Sammy Carter during the early morning hours of August 15, 1982?"

The district court's instruction with respect to the claim for assault and battery is

---

**2.** Thus, your consideration of this claim must be limited to the issue of whether the defendant McClain used excessive force in apprehending Sammy Carter.

The reasonableness or excessiveness of force used to effect an arrest must be considered in light of the circumstances as they appear to the officer at the time of the arrest.

An officer has the power and the authority to arrest a suspect without a warrant where that suspect has committed a violation of the criminal law of South Carolina within the view of that officer.

In making such an arrest, an officer may use whatever force is reasonably necessary to apprehend the offender or effect the arrest.

Under clearly established law in this state, at the time of the arrest, in the early morning hours of August 15, 1982, an officer may arrest any person in the night time by such efficient means as the darkness and the probability of the escape render necessary, even if the life of such person should be thereby taken, when such person, one, has committed a felony, or under circumstances which raise just suspicion of such person designed to steal or commit a felony, such person flees when he is hailed to stop.

Therefore, if reasonable under the circumstances, an officer has the lawful authority to use deadly force to apprehend a suspect if the suspect poses a threat of serious physical harm to the officer, or the suspect poses a threat of serious physical harm to others, or the officer has just suspicion that the suspect has committed a felony and the suspect flees when hailed to stop.

As I noted for you earlier, the right of an officer to use dealy [sic] force cannot be exercised arbitrarily but deadly force may be used when reasonably necessary to stop a fleeing felon; that is, one who an officer reasonably believes to have committed a felony and who flees when hailed to stop by the law enforcement officer.

In determining what force was reasonably necessary to effect an arrest, the issue must be determined in light of all of the surrounding circumstances as they existed at the time of the arrest, on the basis of that degree of force a reasonable and prudent officer would have applied in effecting the arrest under the circumstances.

Now, the four factors to be considered in this respect are the need for the application of force; the relationship between the need and the amount of force that was used; the extent of injury inflicted; and whether the force was applied in an effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

**3.** After the trial of the case, we decided *Kidd v. O'Neil*, 774 F.2d 1252 (4 Cir.1985), in which we formulated the test of what is excessive force somewhat differently from the instruction given by the district court. For present purposes we need not consider the extent, if any, to which the charge was an incorrect statement of the law. Certainly on retrial the charge should be brought into conformity with *Kidd*.

also set forth in the margin.[4] We note that the district court defined battery as an unlawful touching "done with the intention of bringing about a harmful or offensive conduct...." The jury was also told that if it found that McClain used "no more force than was reasonably necessary to take and keep the plaintiff Sammy Carter in custody, then there can be no assault and battery ..." The jury returned an affirmative answer to the interrogatory "Do you find that Deputy Bobby McClain committed an assault and/or a battery as those terms have been described to you in the court's instructions, on the person of Sammy Carter in effecting his arrest during the early morning hours of August 15, 1982?" After explaining that interrogatory to the jury, the district court cautioned that it could not award separate damages for both use of excessive force and assault and battery. The court instructed: "In other words, they are really one and the same. One cause of action, excessive force, is really based on federal law, and the assault and battery is based on state law. You cannot ... award two sets of damages."

In granting McClain's motion for judgment n.o.v. on the assault and battery claim, the district court ruled that "[u]nder South Carolina law a law enforcement officer has the legal right to use as much force as is reasonably necessary to apprehend an offender, effect an arrest and place him under custody [and] ... to use deadly force

to arrest a person in the nighttime when the officer has just suspicion of the offender's design to commit a felony and the offender flees when hailed," citing *State v. Weaver*, 265 S.C. 130, 217 S.E.2d 31 (1975) and S.C.Code Ann. § 17–13–20 (La.Co-op. 1976). In applying these rules, the district court concluded that the undisputed facts showed that McClain had done nothing more than state law permitted him to do; hence the entry of judgment for McClain.

## II.

■ We begin by considering the legal sufficiency of the evidence to permit Carter to recover on his claims under federal law for use of excessive force and under state law for assault and battery. If we could conclude that the evidence was legally insufficient to permit recovery on either claim, that would be the end of the case. We, of course, do not decide that he must recover under both or either, but we do decide that under the version of the evidence most favorable to Carter, a jury could find in his favor on both claims.

With regard to the § 1983 claim for use of excessive force, there was evidence, in addition to that already recited, that McClain knew who the purported robbers were, and in particular knew that he was firing at Carter. The anonymous tipster named Carter as one of the robbers; McClain had known Carter and Cox for many years; though their faces were cov-

---

**4.** Now, the plaintiff Sammy Carter has also alleged in his fourth cause of action that the defendant Bobby McClain committed an unlawful assault and battery against him.

An assault is defined as an unlawful attempt or offer, with force or violence, to do some bodily harm to another, or engage in some unlawful offensive bodily contact by means apparently calculated to immediately produce the intended result if carried out.

Stated another way, an assault is an unlawful attempt or offer to do bodily injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as create a well-founded fear of imminent peril, coupled with the apparent ability to effectuate the attempt if not prevented.

Battery is defined as the unlawful touching or striking of another by the address of himself or by any substance put in motion by him, done

with the intention of bringing about a harmful or offensive conduct which is not legally consented to by the other, and is not otherwise privileged.

Now, in the present case, if you find that the defendant Bobby McClain used no more force than was reasonably necessary to take and keep the plaintiff Sammy Carter in custody, then there can be no assault and battery, since the touching or handling of the plaintiff would be privileged, in that the defendant was acting within the lawful scope of his authority as a Deputy Sheriff.

In other words, if the defendant Bobby McClain used no more force than was reasonably necessary to apprehend the plaintiff Sammy Carter, your verdict must be for the defendant on the fourth cause of action as to the alleged assault and battery.

ered, their physiques are quite distinctive (Carter is 6′4″ tall and Cox is apparently quite fat); and Cox testified that McClain addressed each of them by name before their masks were removed. Carter and Cox both testified that the police officers did not identify themselves. Carter testified that when the presence of the police officers became known, he thought that they were the mythical drug dealers so that he began to run, and he was not told to halt. Carter and Cox both testified that Carter was at least partially down when McClain shot him the second time and that after McClain fired the second shot, McClain approached Carter and said: "I shot you, I shot you twice, you son of a bitch I wanted to shoot you with this .357." Moreover after Carter was completely immobilized, McClain pointed the shotgun at Carter's face. Finally, one law enforcement officer present at the scene reportedly described McClain as having acted like a "madman" that night.

Though disputed, we think this evidence would permit a jury to find for Carter on both claims. In its most favorable light to Carter, it showed that McClain knew who the masked "robbers" were, but did not call Carter by name before shooting and did not identify himself as a law enforcement agent. It also showed that McClain shot Carter a second time while Carter was wounded and down on one knee, and that subsequently McClain verbally abused Carter and pointed the gun in his face. The evidence of the circumstances under which the second shot was fired is critical. A jury might reasonably think it excessive for a law enforcement officer to keep firing until the suspect is motionless-that Carter was sufficiently immobilized from the first shot that the second shot was unnecessary to subdue him—or it might reasonably conclude that further verbal warnings, including belated identification of defendant McClain as a law enforcement officer, were

due before McClain could justify a second blast. In short, we can visualize several possible bases on which the jury, making credibility findings in favor of Carter, might find that McClain abused his privilege to employ force to apprehend Carter. *See Kidd v. O'Neil*, 774 F.2d 1252 (4 Cir. 1985). We can also visualize how the jury, again making credibility findings in favor of Carter, might find that the torts of assault and battery under state law, as correctly set forth by the district court, were committed.

### III.

In addition to concluding that the evidence was legally sufficient to permit the jury to find for Carter on his federal and state claims, we also think that the verdicts of the jury—against Carter on his federal claim, and for Carter on his state claim—were inconsistent.[5] As submitted to the jury, the use of excessive force was an essential element to be proved by Carter as the basis for recovery under either theory. Indeed the district court apparently concluded as much when it instructed the jury that there could only be one recovery and no pyramiding of damages. While it is true that not every state law tort is also a federal tort for which there can be redress in a suit under § 1983, we do not perceive on the facts of this case how the factfinder could find for Carter on one cause of action and not on the other. Unreasonable or unnecessary force was the touchstone of both causes of action, and from a comparison of South Carolina and federal law, we do not think that there is any distinction between the degree of unnecessary and unreasonable force giving rise to each cause of action.

*Ladnier v. Murray*, 769 F.2d 195 (4 Cir. 1985), sets forth the procedure which is required to be followed when a jury on special interrogatories returns inconsistent

---

5. The district court shared this view. As one of the reasons for granting McClain judgment n.o.v. on the jury's verdict for Carter on his state tort claim, the district court stated: "Having found as a matter of fact in the first interrogatory that defendant McClain did not use more force than was reasonably necessary, the jury could not find that defendant McClain committed an assault and battery under South Carolina law." Although not mentioned by the district court, the converse is also true.

verdicts. In *Ladnier* the plaintiff sued under 42 U.S.C. § 1983, alleging both a violation of his fourth amendment rights by the use of excessive force in arresting him, and also a claim of assault and battery under Maryland common law. The jury stated its findings in answers to special interrogatories. It found that, in arresting plaintiff, the defendant officer had employed physical force "so disproportionate to the need presented as to be shocking to the conscience," and that the force was not reasonably necessary to maintain order or overcome plaintiff's resistance. Yet the jury also concluded that the defendant did not commit a battery on the plaintiff, defined as the intentional use of force against a person that places him in fear of imminent bodily harm, and further found that the defendant's acts were not inspired by an evil purpose or malicious intent. The district court, without attempting to reinstruct the jury to resolve the conflicts in its answers, entered judgment for the plaintiff on the § 1983 claim, and judgment for defendant on the assault and battery count.

On appeal, we concluded in *Ladnier* that it was impossible for the jury to find that the defendant employed disproportionate force without concluding also that he committed a battery, and therefore that the jury's answers to the interrogatories were inconsistent and conflicting. We reversed the district court's entry of judgment, holding that where the jury's findings on special interrogatories were conflicting it was the duty of the court "to harmonize the answers, if it is possible to do so under a fair reading of them." *Id.* at 198. But where, as there, the inconsistencies are irreconcilable, it is necessary to grant a new trial. *Id.*

In view of our conclusion that a verdict for Carter on each of his two causes of action was legally supportable under the evidence and that neither the evidence nor applicable law would permit a verdict for Carter on one cause of action and not the other, *Ladnier* requires that we direct that Carter be given a new trial on both of his causes of action.

## IV.

Anticipating that we might give him a new trial, at least with respect to his alleged cause of action for civil conspiracy, Carter also asks us to address a point of evidence so as to avoid error and the necessity for further appeal or retrial. Specifically, he urges us to hold that the district court incorrectly excluded from evidence the testimony of the witness Patricia McArthur, which was proffered but not admitted at the prior criminal trial of Carter and Cox, with regard to statements made by defendant McArthur to the effect that he and others had "set Sammy and those up."

We decline to make a ruling. The district judge refused to admit this testimony because neither plaintiffs nor defendants had sought to subpoena Ms. McArthur and there was no other showing that she was unavailable even though she was not actually present to testify. We cannot anticipate whether she would be brought before the court on retrial if any party properly sought to subpoena her, and if present and testifying, whether she would give inconsistent testimony. Because there is such uncertainty as to these determinants of admissibility on retrial, we would exceed our proper function in speaking now.

## V.

Since we have concluded that Carter is entitled to a new trial, *inter alia*, on his alleged federal cause of action, there is a federal predicate for the district court's exercise of pendent jurisdiction to conduct the new trial that it granted Carter and Cox on their state claim for civil conspiracy.

**REVERSED AND REMANDED.**