Vernon TRUJILLO, Plaintiff-Appellant,

v.

Ronald GOODMAN, et al.,
Defendant-Appellee.

No. 84–2802.

United States Court of Appeals,
Tenth Circuit.

Aug. 7, 1987.

James A. Carleo, Colorado Springs, Colo., for plaintiff-appellant.

Lawrence J. Simons of Shaw, Simons & Quigg, P.C., Pueblo, Colo., for defendant-appellee.

Before HOLLOWAY, Chief Judge, ANDERSON, Circuit Judge, and BROWN, District Judge.*

STEPHEN H. ANDERSON, Circuit Judge.

Plaintiff Vernon Trujillo appeals from the denial of his post trial motion for judgment notwithstanding the verdict or, in the alternative, for a new trial on his claim alleging a violation of his civil rights under 42 U.S.C. § 1983. The alleged civil rights violation arose out of an injury Trujillo suffered in an altercation with defendant police officer Ronald Goodman. For the reasons set forth below, we affirm.

## BACKGROUND

On April 16, 1982, at approximately 11:30 p.m., Trujillo and his girlfriend were parked in his car in a vacant field in Alamoso, Colorado. Trujillo testified at trial that he and his girlfriend had been at a party earlier in the evening at which he had consumed at least two beers. Defendant, Officer Goodman, who had been with the City of Alamosa police department for two years, stopped to investigate the parked car. As Goodman approached the car, Trujillo got out of the car. Goodman testified that he "noticed Vernon had an odor of alcohol on his breath, and that there was a plastic cup next to the driver's door which was a plastic Coors cup." R. Vol. II at 8. When questioned by the officer, Trujillo denied that he had been drinking. While Goodman and Trujillo were talking, another police officer, Bruce Lukow, drove up and parked approximately 10–15 feet away from Goodman's car. Trujillo's girlfriend got out of the car, and she and Trujillo started to leave the vicinity of the car, telling Goodman that they would walk home.

Goodman ordered Trujillo to return to the area where the officer was standing. When Trujillo complied, Goodman reached out for Trujillo to detain him, because, as Goodman testified, Lukow had just informed him that he should arrest Trujillo if he had been drinking, because Trujillo was under age and had been recently arrested for driving while intoxicated. When Goodman reached out for Trujillo, Trujillo began to run away from the officer. Trujillo testified that he ran because he feared his father's reaction if he was arrested for drinking under age. Goodman testified that he was unable to pursue Trujillo because of a recent injury to his hip. Consequently, Goodman threw his heavy metal flashlight at Trujillo and struck him in the back of the head. The blow caused a depressed skull fracture which required immediate hospitalization and surgery. Co-plaintiff Joseph Trujillo, Vernon's father, incurred medical expenses of $5620.00 as a result of the injury.

On November 22, 1982, Trujillo filed a complaint in the United States District Court for the District of Colorado, alleging violations of 42 U.S.C. §§ 1981, 1983 and 1988, and of the First, Fourth, Eighth and Fourteenth Amendments. He alleged pendent state law tort causes of action for negligence, outrageous conduct, assault and battery, false imprisonment and false arrest.

At the jury trial on August 6, 1984, Trujillo proceeded only on his battery and section 1983 claims. Goodman admitted at

---

* Hon. Wesley E. Brown, Sr. District Judge, District of Kansas, sitting by designation.

trial that at the time Trujillo suffered the injury Goodman was acting as a police officer. He further testified that he was attempting to arrest Trujillo for drinking under age, and he admitted that he used "excessive force" when he threw the flashlight at Trujillo. Goodman stated at trial that the throwing of the flashlight "was just a spontaneous reaction" and that when he threw it he "was aiming at the biggest mass I could hit, which would probably be his back." R. Vol. II at 15. He testified that he did not intend to throw the flashlight in such a manner as to harm Trujillo and that throwing the flashlight was "a mistake". *Id.* at 16, 18.

The district court instructed the jury that the "[d]efendant admits that while acting as an Alamosa police officer, he committed a battery by throwing a flashlight that hit the plaintiff." R. Vol. IV at 84. The court accordingly directed the jury to consider only the question of what damages Trujillo was entitled to as a result of the battery. The court also instructed the jury to award medical expenses of $5650.00 to Trujillo's father. With regard to the section 1983 claim, the court instructed the jury that the parties had stipulated that "at all material times the defendant was acting in his official capacity as a police officer of the City of Alamosa, Colorado" and "that at all material times the defendant was acting under color of law within the meaning of the federal statute, 42 U.S. Code, Section 1983." *Id.* at 86. The district court further instructed that "in throwing a flashlight at the plaintiff, the defendant exceeded his lawful authority under state law" and that "it is admitted that the force used was excessive." *Id.* at 91–92.

The jury awarded Trujillo $25,000.00 as actual damages for the battery claim and found for Goodman on the constitutional rights claim. The court entered judgment accordingly and subsequently denied Trujillo's motions for judgment n.o.v. or, in the alternative, a new trial on the issue of the civil rights violation. Trujillo appeals those denials, arguing that the use of "excessive and deadly force against the plaintiff while arresting him for a minor misdemeanor constitutes a deprivation of plaintiff's constitutional rights" and that Goodman "neither stated nor proved any legally recognized defense to his actions." Appellant's Brief at 4, 8. He seeks no additional damages.

I.

Trujillo argues that the trial court erred in denying his motion for judgment n.o.v. Fed.R.Civ.P. 50(b) provides in pertinent part as follows:

> *Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted....* [A] party *who has moved for a directed verdict* may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict....

*Id.* (emphasis added).

"An appellate court may not consider the contention that the trial court erred in denying an appellant's motion for a judgment notwithstanding the verdict where the appellant failed to move for a directed verdict at the close of evidence, as required by Rule 50 of the Federal Rules of Civil Procedure." *Firestone Tire & Rubber Co. v. Pearson,* 769 F.2d 1471, 1478 (10th Cir. 1985); *Trotter v. Todd,* 719 F.2d 346 (10th Cir.1983); *Continental Baking Co. v. Utah Pie Co.,* 349 F.2d 122, 156 (10th Cir. 1965), *rev'd on other grounds,* 386 U.S. 685, 87 S.Ct. 1326, 18 L.Ed.2d 406 (1967). Trujillo argues that the substance of his and the court's statements made it clear that he sought a directed verdict. Goodman responds that Trujillo failed to make a motion for directed verdict at the close of all the evidence and, therefore, is barred from seeking judgment n.o.v. now.

Although no formal motion appears, we find the record ambiguous as to whether Trujillo informally sought a directed verdict, either on or off the record. In addi-

tion, we note that many courts, as well as commentators, have stated that "the courts have taken a liberal view of what constitutes a motion for directed verdict for the purpose of permitting a later motion for judgment n.o.v." 5A J. Moore, *Moore's Federal Practice* ¶ 50.08 (1986 ed.); *see also McKinnon v. City of Berwyn*, 750 F.2d 1383, 1388 (7th Cir.1984) ("Something less than a formal motion for directed verdict may preserve a party's right to move for judgment notwithstanding the verdict."); *Ebker v. Tan Jay Int'l, Ltd.*, 739 F.2d 812 (2d Cir.1984); *Adjusters Replace-A-Car, Inc. v. Agency Rent-A-Car, Inc.*, 735 F.2d 884 (5th Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 910, 83 L.Ed.2d 924 (1985); *Villanueva v. McInnis*, 723 F.2d 414 (5th Cir.1984); *Acosta v. Honda Motor Co.*, 717 F.2d 828 (3d Cir.1983); *Bohrer v. Hanes Corp.*, 715 F.2d 213 (5th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984); *Moran v. Raymond Corp.*, 484 F.2d 1008 (7th Cir.1973), *cert. denied*, 415 U.S. 932, 94 S.Ct. 1445, 39 L.Ed.2d 490 (1974); *see generally* 9 C. Wright, A. Miller, & F. Elliott, *Federal Practice and Procedure* § 2537 (1971 and Supp. 1986); *but cf. Kinzenbaw v. Deere & Co.*, 741 F.2d 383 (Fed.Cir.1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985); *Martinez Moll v. Levitt & Sons*, 583 F.2d 565 (1st Cir.1978); *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193 (3d Cir.1978). Given the uncertainty in this record, and the general practice of construing liberally what constitutes a motion for a directed verdict, we are reluctant to refuse to consider Trujillo's motion for judgment n.o.v. on the ground that he failed to make a motion for a directed verdict. Thus, we will consider the merits of this issue. *See Miller v. Premier Corp.*, 608 F.2d 973 (4th Cir.1979).

In reviewing the grant or denial of a motion for judgment n.o.v., "we employ the same standard of review as does the trial court." *Ryder v. City of Topeka*, 814 F.2d 1412, 1418 (10th Cir.1987) (citing *Brown v. McGraw-Edison Co.*, 736 F.2d 609, 613 (10th Cir.1984); *Joyce v. Atlantic Richfield*

*Co.*, 651 F.2d 676, 680 (10th Cir.1981)). " 'Judgment n.o.v. is proper only when the evidence so strongly supports an issue that reasonable minds could not differ.' " *Ryder*, 814 F.2d at 1418 (quoting *Delano v. Kitch*, 663 F.2d 990, 1002 (10th Cir.1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2012, 72 L.Ed.2d 468 (1982)); *see also Symons v. Mueller Co.*, 493 F.2d 972, 976 (10th Cir. 1974); *Swearngin v. Sears Roebuck & Co.*, 376 F.2d 637, 639 (10th Cir.1967). Furthermore, "[w]e must view the evidence in the light most favorable to the party against whom the motion is made and give that party the benefit of all reasonable inferences from the evidence." *Ryder*, 814 F.2d at 1418 (citing *Brown*, 736 F.2d at 613). Applying that standard to this case, we find no error in the district court's denial of Trujillo's motion for judgment n.o.v. for the reasons stated below.

The heart of Trujillo's argument is that a judgment n.o.v. was warranted because the defendant police officer could not, in this case, commit a battery under color of state law without simultaneously violating his constitutional rights under section 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. A plaintiff must plead and prove two elements in order to recover under section 1983.

First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any

State or Territory." This second element requires that the plaintiff show that the defendant acted "under color of law." *Anthony v. Baker*, 767 F.2d 657, 663 (10th Cir.1985); *Wise v. Bravo*, 666 F.2d 1328 (10th Cir.1981).

It is undisputed that a police officer's use of force can, in appropriate circumstances, give rise to liability under section 1983. It is equally clear, however, that "not all state law torts are constitutional violations for which section 1983 provides a remedy." *Sampley v. Ruettgers*, 704 F.2d 491, 494 (10th Cir.1983) (footnote omitted) (citing *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). *See also Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Carter v. Rogers*, 805 F.2d 1153 (4th Cir.1986); *Burton v. Livingston*, 791 F.2d 97 (8th Cir.1986); *Byrd v. Clark*, 783 F.2d 1002 (11th Cir. 1986); *Brierley v. Schoenfeld*, 781 F.2d 838 (10th Cir.1986); *Lewis v. Downs*, 774 F.2d 711 (6th Cir.1985); *Jamieson by & through Jamieson v. Shaw*, 772 F.2d 1205 (5th Cir. 1985); *Gumz v. Morrissette*, 772 F.2d 1395 (7th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986); *Hewitt v. City of Truth or Consequences*, 758 F.2d 1375 (10th Cir.), *cert. denied*, 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985); *Wise v. Bravo*, 666 F.2d 1328 (10th Cir. 1981); *Shillingford v. Holmes*, 634 F.2d 263 (5th Cir.1981); *Wells v. Ward*, 470 F.2d 1185 (10th Cir.1972); *Schiller v. Strangis*, 540 F.Supp. 605 (D.Mass.1982). This court has quoted with approval Judge Friendly's statement in *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), that "[c]ertainly the constitutional protection is nowhere nearly so extensive as that afforded by the common law tort action for battery, which makes actionable any intentional and unpermitted contact with the plaintiff's person...." *Sampley*, 704 F.2d at 494.

We note that the courts have struggled to develop a clear and uniform conceptual framework within which to analyze, under section 1983, deprivations of constitutional rights based upon allegations of excessive force used by police. "[T]here has been a conceptual struggle ever since revival of § 1983 to identify the source of a general constitutional right to bodily security comparable to that given special protection in the fourth and eighth amendments and which could be asserted under § 1983 by persons other than arrest suspects and convicts." *Kidd v. O'Neil*, 774 F.2d 1252, 1258 (4th Cir.1985). *See generally Gilmere v. City of Atlanta*, 774 F.2d 1495 (11th Cir. 1985), *cert. denied*, — U.S. —, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); *Barnier v. Szentmiklosi*, 565 F.Supp. 869 (E.D.Mich. 1983); *Schiller v. Strangis*, 540 F.Supp. 605 (D.Mass.1982).

However, as the Seventh Circuit has recently observed, "[t]he constitutional provision on which most courts ... ground a § 1983 claim solely alleging excessive use of force by state officials is the Fourteenth Amendment. In other words, the use of force is treated as a potential deprivation of liberty without due process of law." *Gumz v. Morrissette*, 772 F.2d 1395, 1399 (7th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986). *See also Lewis v. Downs*, 774 F.2d 711 (6th Cir.1985); *Blake v. Katter*, 693 F.2d 677 (7th Cir.1982); *Black v. Stephens*, 662 F.2d 181 (3d Cir.1981), *cert. denied*, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982); *Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345 (9th Cir.1981), *aff'd on other grounds sub nom. Kush v. Rutledge*, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983); *Shillingford v. Holmes*, 634 F.2d 263 (5th Cir.1981). Cases in this circuit have primarily analyzed section 1983 claims of improper police activity in terms of whether such activity deprived a person of his or her Fourteenth Amendment due process rights, but we have not excluded other grounds for relief. *See Garcia v. Salt Lake County*, 768 F.2d 303 (10th Cir.1985); *Hewitt v. City of Truth or Consequences*, 758 F.2d 1375 (10th Cir.), *cert. denied*, 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985); *McKay v. Hammock*, 730 F.2d 1367

(10th Cir.1984); *Wise v. Bravo*, 666 F.2d 1328 (10th Cir.1981); *Lessman v. McCormick*, 591 F.2d 605 (10th Cir.1979); *Wells v. Ward*, 470 F.2d 1185 (10th Cir.1972); *Morgan v. Labiak*, 368 F.2d 338 (10th Cir. 1966); *Stringer v. Dilger*, 313 F.2d 536 (10th Cir.1963).[1]

As we have noted, Trujillo alleged in his complaint violations of the First, Fourth, Eighth and Fourteenth Amendments. However, he presses no particular provision on appeal. In its instructions to the jury, the district court confined itself to the provisions of the Fourteenth Amendment, R. Vol. IV at 89–90, to which Trujillo lodged no objection. We therefore assume that Trujillo's claim on appeal is based on the due process requirement of the Fourteenth Amendment.

██ This circuit has stated that "the Due Process Clause [of the Fourteenth Amendment] protects individuals from the abuse of official power and therefore imposes substantive limitations on state activities." *Hewitt*, 758 F.2d at 1378. In *Hewitt*, we acknowledged that "the use of *excessive* force on a pretrial detainee deprives the victim of life or liberty without due process in violation of the Fourteenth Amendment." *Id.* at 1379 (emphasis origi-

nal). While *Hewitt* involved the use of force against a person in police custody, the same analysis applies to people not yet in police custody. *See, e.g., Wise v. Bravo*, 666 F.2d 1328 (10th Cir.1981). "Factors relevant to whether the use of force is excessive are the relationship between the amount of force used and the need presented, the extent of the injury inflicted, and the motives of the state officer. Force inspired by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience, or by malice rather than mere carelessness, may be redressed under section 1983." *Hewitt*, 758 F.2d at 1379 (citation omitted). *See also Garcia v. Miera*, 817 F.2d 650 (10th Cir.1987); *Brierley v. Schoenfeld*, 781 F.2d 838 (10th Cir. 1986); *Lewis v. Downs*, 774 F.2d 711 (6th Cir.1985); *Gumz v. Morrissette*, 772 F.2d 1395 (7th Cir.1985), *cert. denied*, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986); *Wise*, 666 F.2d at 1333–34; *Shillingford v. Holmes*, 634 F.2d 263 (5th Cir.1981); *Hall v. Tawney*, 621 F.2d 607 (4th Cir.1980); *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Such an inquiry is a factual one, depending for its resolution on the totality of the circumstances presented, and is one properly reserved, in most instances, for

---

1. Some other courts have, however, analyzed the question somewhat differently. For example, in *Jenkins v. Averett*, 424 F.2d 1228 (4th Cir.1970), the court based the protection from injuries wrongfully inflicted by state officials on the Fourth Amendment made applicable to the states by the Fourteenth Amendment. In *Kidd v. O'Neil*, 774 F.2d 1252 (4th Cir.1985), after discussing a series of Supreme Court cases, another panel of the Fourth Circuit concluded that:

> "excessive force" claims may lie under § 1983 to vindicate either fourth, eighth, or fifth amendment violations of the cognate right to "personal security" in any of the specific factual contexts dealt with in those decisions and certainly in others not touched upon.

*Id.* at 1260. It further evaluated the use of excessive force in effecting an arrest as follows:

> [T]he fourth amendment, through the fourteenth, [is] a direct source of constitutional protection against uses of excessive physical force by state police officers in arresting suspects.
>
> \* \* \* \* \* \*

Whether a particular arrest is constitutionally unreasonable [as an unreasonable seizure of the person] depends upon the factual circumstances.... To determine the question requires that a court "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."

*Id.* at 1254–55, 56 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985); *see also Schiller v. Strangis*, 540 F.Supp. 605 (D.Mass.1982) (analyzing the issue of excessive force as a deprivation of liberty without due process, substantive and/or procedural, of law under the Fifth or Fourth and Fourteenth Amendments).

We need not address, in this case, whether Trujillo could also pursue a Fourth Amendment claim based on an unreasonable search or seizure and, if so, what standard we would use in evaluating such a claim. As we indicate, *infra*, we must assume that Trujillo proceeds only on a Fourteenth Amendment due process claim.

the jury. *See Byrd v. Clark*, 783 F.2d 1002 (11th Cir.1986); *Patzner v. Burkett*, 779 F.2d 1363 (8th Cir.1985); *Roberts v. Marino*, 656 F.2d 1112 (5th Cir.1981); *Shillingford*, 634 F.2d 263; *Morgan v. Labiak*, 368 F.2d 338 (10th Cir.1966); *Stringer v. Dilger*, 313 F.2d 536 (10th Cir.1963).

▪ Trujillo argues in this case that, because Goodman admitted that he committed a battery and that he used "excessive force" in throwing the flashlight at Trujillo, and the court so instructed the jury, Goodman necessarily violated Trujillo's constitutional rights.[2] He further argues that Goodman's only possible defense to the claim of violation of constitutional rights is that he did not intend to violate any such rights. Trujillo relies on the statement of this circuit in *McKay v. Hammock*, 730 F.2d 1367 (10th Cir.1984), that

"a plaintiff need not necessarily address a defendant's state of mind to successfully articulate a section 1983 cause of action because '[s]ection 1983, unlike its criminal counterpart, 18 U.S.C. § 242, has never been found by [the Supreme Court] to contain a state-of-mind requirement.'" *Id.* at 1373 (quoting *Parratt v. Taylor*, 451 U.S. 527, 534, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981)). He finally argues, without supporting citations, that "a verdict that a police officer committed a battery while making an arrest is inconsistent with a finding that a police officer did not violate the arrestee's constitutional rights." Appellant's Brief at 8. We disagree.

While *McKay* correctly indicated that plaintiffs need not necessarily address the "state of mind" of a defendant in order to state a section 1983 claim, the opinion went on to state that the Supreme Court "has

2. The district court instructed the jury on Trujillo's section 1983 claim as follows:

In order for the plaintiff to recover on his claim of deprivation of constitutional rights, you must find that all of the following elements have been proved by a preponderance of the evidence. One, that the defendant knowingly threw a flashlight and hit the plaintiff in the back of the head; two, that the defendant acted under color of some law or municipal ordinance, and this is admitted; three, that the defendant's acts deprived the plaintiff of his federal constitutional right not to be denied or deprived of his liberty or personal security without due process of law; and, four, that the defendant's conduct was a cause of injury and consequence damages to the plaintiff.

\* \* \* \* \* \*

An act is done knowingly if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. You may infer that a person intends the natural consequences of his actions. To be deprived of personal security or liberty without due process of law, means to be so deprived without authority of the law.

You are instructed that in throwing a flashlight at the plaintiff, the defendant exceeded his lawful authority under state law. The Fourteenth Amendment to the United States Constitution provides that no state shall deprive any person of his or her liberty without due process of law. The liberty protection is not an unqualified protection or privilege to do what one pleases at all times, it is subject to reasonable restraints imposed by law. Plaintiff claims that excessive force was used by the defendant in connection with his arrest.

A person, even if he is being lawfully arrested, has a constitutional right to be free of excessive force. An officer is entitled to use such force as a reasonable person would think is required to take one arrested into custody and this may include such physical force as is reasonably necessary. An officer is not allowed, however, to use any force beyond that reasonably necessary to accomplish his lawful purpose. You are instructed that in this case it is admitted that the force used was excessive.
R. Vol. IV at 90–92.

These instructions are not specifically framed in terms of the standards set forth in *Wise* or *Hewitt*. Furthermore, we question the propriety of instructing the jury that the force used was "excessive" based simply on Goodman's admission, at trial, that he used "excessive force". Indeed, whether the force used was excessive is itself the question to be determined from the facts of the case.

However, neither party made objection to the instructions at trial, nor do they do so on appeal. Where no objection is made to jury instructions, an appellate court will not overturn the instructions absent plain error. *Ryder*, 814 F.2d at 1428; *United States v. Devous*, 764 F.2d 1349 (10th Cir.1985). Viewing the instructions as a whole, we find no plain error. We view the judge's instruction concerning the excessiveness of the force as implicating only one part of the standard to be applied by the jury in determining whether, in view of the totality of the circumstances of this case, Trujillo's constitutional rights were violated.

noted that some constitutional violations may by their very nature incorporate an element of intent" and that the "Court has most often addressed the intent issue indirectly in establishing the standards under which the conduct of a particular type of defendant rises to a denial of due process." *McKay,* 730 F.2d at 1373.[3] Thus, the widely followed test, discussed above and followed in this circuit, for determining when a police officer's conduct violates a person's constitutional rights itself incorporates some intent requirement because it includes an inquiry into the "motives of the state officer." *Hewitt v. City of Truth or Consequences,* 758 F.2d 1375, 1379 (10th Cir.), *cert. denied,* 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985). In this case, Goodman testified that, while he intentionally hurled the flashlight at Trujillo's retreating figure, he did so as a "spontaneous reaction," that he was aiming at his back, that he did not intend to harm Trujillo and that throwing the flashlight was "a mistake." R. Vol. II at 15–18. Under the facts of this case, the jury could properly conclude that Goodman's use of force was not "inspired by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience, or by malice rather than mere carelessness." *Hewitt,* 758 F.2d at 1379. We therefore find no impropriety in submitting the question of whether Goodman violated Trujillo's constitutional rights to the jury and we find no error in the jury's verdict. Accordingly, the district court did not err in denying Trujillo's motion for judgment n.o.v.[4]

## II.

Trujillo alternatively seeks a new trial on his section 1983 claim. It is well estab-

---

**3.** This court in *McKay* further noted that "in any section 1983 action, whether a defendant should be relieved of liability for a constitutional violation because he proceeded in good faith is an issue that can be fully determined within the context of the affirmative defense of immunity." 730 F.2d at 1373 n. 5. In his answer to Trujillo's complaint, Goodman asserted as affirmative defenses that he "acted in good faith" and that he "is entitled to immunity." R. Vol. I at 5. However, he did not pursue those defenses with any specificity at trial, nor does he specifically assert the defense of good faith immunity on appeal. We therefore do not address that issue.

**4.** We are also unpersuaded by Trujillo's argument that, in this case, there is an inherent inconsistency between the finding that a battery was committed but that no constitutional violation occurred. The few cases in which such an inconsistency has been found are distinguishable on their facts.

In *Ladnier v. Murray,* 769 F.2d 195 (4th Cir. 1985), the jury returned special verdict findings to the effect that the defendant police officer had applied physical force to the plaintiff "that was so disproportionate to the need presented as to be shocking to the conscience," so that the court entered judgment for the plaintiff on his section 1983 claim, but that the defendant had not committed a battery and had not used force inspired by an "evil purpose or malicious intent." The Fourth Circuit awarded a new trial because of irreconcilable conflicts between the jury's findings, stating:

Under the facts of this case, we do not think it possible for a jury reasonably to find that [the defendant] applied disproportionate force to plaintiff but that [the defendant] did not intentionally use force on plaintiff such that plaintiff was placed in fear of imminent bodily harm.

*Id.* at 199 (emphasis added). Similarly, in *Carter v. Rogers,* 805 F.2d 1153 (4th Cir.1986), the court stated:

"[T]he verdicts of the jury—against [the plaintiff] on his federal claim and for [the plaintiff] on his state claim—were inconsistent. As submitted to the jury, the use of excessive force was an essential element to be proved by [the plaintiff] as the basis for recovery under either theory.... While it is true that not every state law tort is also a federal tort for which there can be redress in a suit under § 1983, we do not perceive on the facts of this case how the factfinder could find for [the plaintiff] on one cause of action and not on the other. Unreasonable or unnecessary force was the touchstone of both causes of action, and from a comparison of South Carolina and federal law, we do not think that there is any distinction between the degree of unnecessary and unreasonable force giving rise to each cause of action.

*Id.* at 1158 (footnote omitted). By contrast, we find no inconsistency in this case. Under the Colorado common law of battery, "[o]ne who intentionally inflicts upon another an offensive, although non-harmful, bodily contact, is liable therefor even though the act committed was not done with the intent to cause actual physical harm." *Whitley v. Andersen,* 37 Colo.App. 486, 551 P.2d 1083, 1085 (1976), *aff'd,* 194 Colo. 87, 570 P.2d 525 (1977). We find sufficient leeway between that standard and the one for finding a § 1983 violation to hold that, in this case, there was no inconsistency in the verdicts reached.

lished that a district court's determination not to grant a new trial will not be overturned on appeal absent a "showing of a 'clear abuse of discretion.'" *Ryder*, 814 F.2d at 1424 (quoting *United States v. Latimer*, 780 F.2d 868 (10th Cir.1985)). For the reasons discussed above in the context of Trujillo's motion for judgment n.o.v., we find no abuse of discretion in the district court's denial of Trujillo's motion for a new trial.

## CONCLUSION

For the foregoing reasons, the decision of the district court denying Trujillo's motion for judgment n.o.v. or, alternatively, for a new trial is AFFIRMED.