Howard J. BRIERLEY, and V–1 Oil Company, Plaintiffs-Appellants,

v.

F.J. SCHOENFELD, Jr., Defendant-Appellee.

No. 85–1332.

United States Court of Appeals, Tenth Circuit.

Jan. 15, 1986.

Reid Tateoka, Salt Lake City, Utah (Scott C. Pierce, of McKay, Burton, Thurman & Condie, Salt Lake City, Utah, with him on the brief), for plaintiffs-appellants.

David B. Thompson, Asst. Atty. Gen. (David L. Wilkinson, Atty. Gen., Salt Lake City, Utah, with him on the brief), for defendant-appellee.

Before BARRETT, McWILLIAMS, and ANDERSON, Circuit Judges.

BARRETT, Circuit Judge.

This appeal is taken by plaintiffs-appellants, Howard J. Brierley and V–1 Oil Company (for convenience hereinafter referred to as Brierley) from the district court's dismissal with prejudice of their 42 U.S.C. § 1983 civil rights suit for damages against defendant-appellee, F.J. Schoenfeld, Jr. (Schoenfeld), sued individually and in his capacity as a Utah Highway Patrol Officer. The court found that Officer Schoenfeld was clothed with qualified immunity in the course of his challenged conduct and thus shielded from liability for damages. A recitation of the pertinent facts and issues on appeal follows.

On the morning of March 9, 1983, Officer Schoenfeld, who was in his twelfth year of service as a trooper with the Utah Highway Patrol, observed a two axle tank truck owned by V–1 Oil Company being driven by Mr. Brierley eastbound on Highway 104 in Weber County, Utah.R., Vol. III, p. 48. The closed container truck was carrying propane, a hazardous material, and was properly placarded. Officer Schoenfeld followed the truck for about a quarter of a mile. He observed the tires which he believed to be "squatty," indicating to him that the truck was loaded and probably in excess of legal weight. He believed that the tires were "noticeably bulged." *Id.* at 53. Schoenfeld stopped the truck and after a brief conversation with Mr. Brierley, during which he advised Brierley that he suspected the truck was overweight, he proceeded to weigh the truck with his portable scales. Schoenfeld determined that the truck was not overweight. *Id.* at 59. Officer Schoenfeld then requested that Mr. Brierley display his shipping papers, and after examining them he cited Mr. Brierley for not carrying proper shipping papers. This

citation resulted in a contested action in state court in Weber County, Utah. The circuit court judge found Mr. Brierley not guilty. In defending this action, Mr. Brierley incurred attorney fees of $1,319.19. Subsequently, Mr. Brierley and V–1 Oil Company initiated this action.

The 42 U.S.C. § 1983 suit filed in the district court alleged that Officer Schoenfeld had stopped the Brierley truck without reasonable suspicion in violation of the Fourth Amendment to the United States Constitution. The trial brief of Mr. Brierley equated "reasonable suspicion" with probable cause to arrest: "The issue before this court is whether the observation of Officer Schoenfeld (of squatty tires) established probable cause for arrest." R., Vol. I, p. 53. After a non-jury trial, the district court entered its findings of facts and conclusions of law and judgment dismissing plaintiffs' complaint with prejudice.

The court found that Schoenfeld, in making the stop in question, was not motivated by evil motive or intent and his actions did not involve reckless or callous indifference to the federally protected rights of the plaintiffs. The district court concluded that although Officer Schoenfeld's observation of "squatty" tires did not constitute an articulable and reasonable suspicion sufficient to justify the stop of the truck, thus rendering the stop an invalid seizure under the Fourth Amendment, that at the time of the stop the law in Utah was not clearly established that it was a violation of the Fourth Amendment to stop a closed container truck carrying hazardous propane material because its tires appeared "squatty". The court concluded that "[O]fficer Schoenfeld's observation of squatty tires on the truck did not constitute an articulable and reasonable suspicion sufficient to justify the officer in stopping the truck and was an invalid seizure pursuant to the Fourth Amendment to the United States Constitution." *Id.* at 77. However, the court concluded that under the circumstances, Officer Schoenfeld's actions involving the stop of the truck and questioning of Mr. Brierley concerning the possibility of the truck being overweight "[d]id not

violate a clearly established statutory or constitutional right of which a reasonably competent and prudent highway patrolman would have been aware at that time." *Id.* at 78. The court finally concluded that, based on these circumstances, Officer Schoenfeld was granted a qualified immunity for his conduct and was thereby shielded from liability for civil damages. *Id.* at 78.

On appeal, Brierley contends that the district court erred in granting a qualified immunity to Officer Schoenfeld who acted without probable cause and without a reasonable and articulable suspicion in stopping the commercial truck of Mr. Brierley in violation of Mr. Brierley's Fourth Amendment rights.

**Discussion and Decision**

*Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967) established that the defense of good faith and probable cause is available to police officers in a § 1983 action for false arrest and imprisonment. For our purposes in the case at bar, the Supreme Court observed:

> A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does. Although the matter is not entirely free from doubt [footnote omitted], *the same consideration would seem to require excusing him from liability for acting under a statute that he reasonably believed to be valid but that was later held unconstitutional, on its face or as applied.*

386 U.S. at 555, 87 S.Ct. at 1218 (underlining supplied).

Officer Schoenfeld testified that for seven of his twelve years on the Utah Highway Patrol, he had been assigned to the truck enforcement program, which includes weighing of trucks, inspection for vehicle defects, inspection for hazardous material violations and general compliance. R., Vol. III, p. 48. He testified that he had received special training at schools conducted by the

Highway Patrol, the Federal Government and on-the-job training with fellow officers with greater experience. *Id.* at 48, 49. One of the important indications of overweight, he was taught, was the condition of the tires and shipping documents as well as weight slip. *Id.* at 50. "Squatty" tires on a truck such as that operated by Mr. Brierley on March 9th were, in his experience, indicative of overweight, and about fifty percent of the trucks he had stopped with "squatty" tires were overweight. *Id.* at 61, 62. In the instant case, Officer Schoenfeld stopped the Brierley truck in his belief that it was overweight because the tires bulged at the bottom, and he stopped the truck pursuant to the Utah Code Annot. § 27–12–153(1) (1984) which provides:

> Any peace officer having reason to believe that the height, width, length or weight of a vehicle and load is unlawful is authorized to require the driver to stop and submit to a measurement or weighing of the same. The weighing may be done either by means of portable or stationary scales, and the officer may require that such vehicle be driven to the nearest scales in the event such scales are within two miles.

Further, Utah Code Annot. § 77–7–15 (1982) provides:

> A peace officer may stop any person in a public place when he has a reasonable suspicion to believe he has committed or is in the act of committing or is attempting to commit a public offense and may demand his name, address and an explanation of his action.

### Reasonableness of the Warrantless Stop

In the course of oral argument, counsel for the parties informed the court that there are no Utah state court decisions holding that the action taken by Officer Schoenfeld is without probable cause or violative of § 27–12–153(1) (1984). While this court must respectfully disagree with the trial court's conclusion that Officer Schoenfeld's observation of the "squatty" tires on the truck did not constitute an articulable and reasonable suspicion justi-

fying the officer's stop of the truck, we nevertheless affirm the court's dismissal of plaintiffs' complaint and cause of action with prejudice.

Of course, there must be state action in order to invoke § 1983. It is obligatory that the plaintiff prove that he was denied a federal constitutional or statutory right under color of state law, custom or usage. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Wright v. No. Skiter, Inc.,* 774 F.2d 422 (10th Cir.1985).

■ We hold that Officer Schoenfeld did have articulable and reasonable suspicion, based on his observation of the "squatty" tires, to make the brief detention and stop of the truck operated by Mr. Brierley to determine whether it was overweight. This is particularly so in light of the fact that the Brierley vehicle was a closed container truck transporting propane, a hazardous material. The public interest dictates that highway patrol officers be particularly cautious in evaluating the dangers which are likely to flow from a propane accident on the public highways.

We cannot accept appellants' argument that "the type of action taken by Schoenfeld was unjustified harassment of commercial trucking. The only effective way to deter this type of action on the part of law enforcement officers, such as Schoenfeld, is to hold them liable under § 1983 for unreasonable detention of motorists." (Brief of appellants, p. 14.) Brierley does not cite a single Utah decision pertaining to the issue presented here relative to the reasonableness of a police officer's stop of a truck transporting hazardous material based upon the observation of "squatty" tires. Certainly, the public safety is involved in assuring that such trucks are not overweight.

In *Prochaska v. Marcoux,* 632 F.2d 848, 852 (10th Cir.1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 841 (1981), we observed:

> Under *Delaware v. Prouse, supra,* [440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)], the stopping of an automobile

and the detention of its occupants, constituting a seizure, is proper and considered reasonable if there is an articulable and reasonable suspicion that either the motorist is unlicensed or the vehicle unregistered, or that either the vehicle or occupant is otherwise subject to seizure for violating the law.

A *detention* of a person for a brief examination or investigation implicates the Fourth Amendment even though the reasonableness of seizures involving brief detentions short of traditional arrests are less intrusive than traditional arrests. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In such cases, the police must have a "reasonable suspicion" based on objective facts that the defendant is involved in criminal activity. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979); *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1978). Officer Schoenfeld, based upon his observation of the squatty rear-axle tires on the Brierley truck, did have an articulable and reasonable suspicion that the truck was overweight.[1] The experience of the officer is a factor to be carefully considered in determining whether an investigatory stop is justified. *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981). More significant, however, is a finding that the police officer acted in the good faith belief that his actions were lawful; the question in such cases is whether the officer's belief was reasonable. *Bledsoe v. Garcia*, 742 F.2d 1237 (10th Cir.1984).

*Terry v. Ohio, supra,* permits police, in recognition of their obligation to enforce the law when they reasonably suspect criminal activity, to effect stops and to pursue short, limited investigations infringing on the individual's freedom of movement based on less than probable cause to arrest. This intrusion was explained in the context of a "balancing test" in *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983) where the Supreme Court opined:

> The exception to the probable-cause requirement for limited seizures of the person recognized in *Terry* and its progeny rests on a balancing of the competing interests to determine the reasonableness of the type of seizure involved within "the meaning of the Fourth Amendment's general proscription against unreasonable searches and seizures." 392 U.S. at 20 [88 S.Ct. at 1879]. We must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion. When the nature and extent of the detention are minimally intrusive of the individual's Fourth Amendment interests, the opposing law enforcement interests can support a seizure based on less than probable cause.

Thus, in *United States v. Place, supra,* the court held that when the authorities possessed articulable facts warranting a

---

1. We distinguish a brief detention in the scope of its implication with the Fourth Amendment from a warrantless arrest. The constitutional validity of a warrantless arrest does, of course, depend upon whether the arresting officer has probable cause. Such cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent man in believing that an offense has been or is being committed. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir.1985); *United States v. Miller*, 532 F.2d 1335 (10th Cir.), *cert. denied*, 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 106 (1976). *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) teaches that in determining whether probable cause exists, the courts must apply the "totality of circumstances" test. Under this test, many state courts have rejected the contention that temporary roadblock checkpoints operated by state police to detect and deter drunk drivers constitute a violation of the Fourth Amendment's prohibition against unreasonable stops, searches and seizures. *State v. Marchand*, 104 Wash.2d 434, 706 P.2d 225 (1985); *People v. Scott*, 63 N.Y.2d 518, 483 N.Y.S.2d 649, 473 N.E.2d 1 (1984); *Little v. State*, 300 Md. 485, 479 A.2d 903 (1984); *Ekstrom v. Justice Court*, 136 Ariz. 1, 663 P.2d 992 (1983); *State v. Deskins*, 234 Kan. 529, 673 P.2d 1174 (1983).

reasonable belief that luggage contained narcotics, seizure of the luggage briefly from the suspect's custody to pursue further investigation was justified. The court relied on the *Terry* opinion's identification of the governmental interests supporting such stops-seizures of the person as "[e]ffective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22, 88 S.Ct. at 1880. *See also, Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (upheld police officer's warrantless forcible stop of suspect to investigate an informant's tip that suspect was in possession of narcotics and a concealed weapon); *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) (upheld brief detention of person occupying premises while authorities undertook search pursuant to a valid search warrant); *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) (detention for purpose of brief investigation near border of a vehicle suspected of harboring illegal aliens); *United States v. Gay,* 774 F.2d 368 (10th Cir.1985) (officer need not have probable cause to arrest suspect before he may detain and investigate, and, in order to justify an investigative stop the officer, under an objective standard, must be able to point to specific and articulable facts which, taken together, with natural inferences from those facts, reasonably justify the intrusion); *United States v. Gonzalez,* 763 F.2d 1127 (10th Cir.1985); *United States v. Recalde,* 761 F.2d 1448 (10th Cir. 1985); *United States v. McCranie,* 703 F.2d 1213 (10th Cir.), *cert. denied,* 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983); *United States v. Granado,* 453 F.2d 769 (10th Cir.1972).

Thus, based on the record, we hold that Officer Schoenfeld did have an objective "articulable and reasonable suspicion" to believe that the closed container truck operated by Mr. Brierley was overweight, justifying the brief detention and investigation.

### The Good Faith or Qualified Immunity Issue

■ Assuming, arguendo, that the district court correctly concluded that Officer Schoenfeld's stop of the Brierley truck did constitute a violation of Mr. Brierley's Fourth Amendment rights, we agree with the district court's conclusion that Officer Schoenfeld's actions did not violate a clearly established statutory or constitutional right of which a reasonably competent and prudent Utah highway patrolman would have been aware at the time the Brierley truck was stopped and that Officer Schoenfeld was shielded from liability for civil damages by virtue of the qualified immunity he was granted.

Individual police officers have no absolute immunity from civil rights suits such as that accorded judges and prosecutors. However, they have been held to be entitled to a qualified or good faith immunity under § 1983 unless they violate a clearly established constitutional or statutory right of which they knew or should have known at the time of the alleged acts. *Martinez v. Winner,* 771 F.2d 424, 444 (10th Cir. 1985). In those instances where the negligence of police may constitute a denial of substantive due process, this court has held that in order to subject police officers to a § 1983 damage claim there must be evidence of an abuse of official power that shocks the conscience. *Lessman v. McCormick,* 591 F.2d 605, 609–11 (10th Cir.1979). Accordingly, we have held, just as the Supreme Court did in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), that not all unlawful deprivations of liberty by police were intended to be actionable under § 1983. *Stringer v. Dilger,* 313 F.2d 536 (10th Cir.1963) (where illegal arrest with use of excessive force, seizure of property, denial of bail and compelled plea of guilty were held to be actionable under § 1983). *See also, Marland v. Heyse,* 315 F.2d 312 (10th Cir.1963). Thus, not all force by police officers constitutes a § 1983 action and not all state torts are constitu-

tional violations to be vindicated pursuant to § 1983. *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 I.Ed.2d 433 (1979); *Sampley v. Ruettgers,* 704 F.2d 491 (10th Cir.1983); *Wise v. Bravo,* 666 F.2d 1328 (10th Cir.1981).

*Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) stands for the rule that in any § 1983 action the question whether a police officer should be relieved of liability for a constitutional deprivation depends upon whether the officer acted in good faith, an issue to be determined within the context of the affirmative defense of a qualified immunity. Accord: *McKay v. Hammock,* 730 F.2d 1367 (10th Cir.1984); *A.E. v. Mitchell,* 724 F.2d 864 (10th Cir.1983). In *Anthony v. Baker,* 767 F.2d 657, 664–65 (10th Cir.1985), we recognized that under the objective standard set forth in *Harlow v. Fitzgerald, supra,* officials performing discretionary functions are shielded from liability for civil damages if their conduct does not violate clearly established constitutional or statutory rights which a reasonable person would have known. *See also, Benavidez v. Gunnell,* 722 F.2d 615 (10th Cir.1983). The record does not show that Officer Schoenfeld acted with evil motive or intent or that he acted with reckless disregard of Mr. Brierley's federally protected rights under the Fourth Amendment when he stopped the Brierley truck and proceeded to weigh it. As the district court concluded, Officer Schoenfeld's actions have not been shown to have violated clearly established statutory or constitutional rights.

WE AFFIRM.