947 F.2d 953
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Robert Parry HAGEN, Plaintiff-Appellant,
v.
Steven E. COON, Dan Affalter, Ronald Dalquest, Donald
Dalquest and the City of Lawrence, Kansas,
Defendant-Appellee.
 No. 90-3078.
 United States Court of Appeals, Tenth Circuit.
 Nov. 5, 1991.
 
 1
 Before EBEL and McWILLIAMS, Circuit Judges, and ALLEY, District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 WAYNE E. ALLEY, District Judge.
 
 
 4
 The present action comes before this Court on an appeal from a grant of summary judgment by the district court. Hence, only facts that are material and undisputed shall be examined. These facts are taken from the pleadings and depositions of the Defendants-Appellees and from the deposition of the Plaintiff-Appellant Robert P. Hagen ("Hagen").
 
 
 5
 On September 27, 1986, a traffic incident occurred in Lawrence, Kansas, involving Hagen and Defendants-Appellees Steven E. Coon ("Coon"), Dan Affalter ("Affalter"), and Ronald Dalquest ("R. Dalquest"), who are all Lawrence police officers. The facts leading up to this incident are as follows.
 
 
 6
 Hagen grew up in Lawrence, Kansas and attended Lawrence High School. He later opened a lumber company there, which he operated until 1974 when he retired. For five or six years, Hagen served as a highway commissioner for the State of Kansas, for which he was obliged to travel frequently throughout the northeastern part of the state. Hagen has had 13 past confrontations with law enforcement officers while driving in northeastern Kansas, during many of which he became "annoyed," and on at least one occasion, demanded to be taken to the courthouse.
 
 
 7
 On the day of the incident, Hagen was driving north on Vermont Street in Lawrence, trying to leave Lawrence and drive to Kansas City. Part of downtown Lawrence had been blocked off that morning to allow for the Band Day Parade. At the intersection of Eighth and Vermont Streets, Hagen saw Officer Coon, who was standing in the intersection, pointing west. Hagen admits that he understood that Coon meant for Hagen to turn west on Eighth, and further admits that he knew that he could proceed thereon until he eventually reached a street that would take him out of town.
 
 
 8
 As Hagen approached Coon, he rolled down his window and motioned for Coon to approach his car. When Coon approached him, Hagen told him he was trying to get out of town, to which Coon replied "Why don't you go to Mississippi."[1]
 
 
 9
 At this point, Hagen became annoyed, said "shit," placed his car in gear and accelerated quickly while turning the steering wheel sharply to the left. This made the tires screech. Coon yelled to Hagen to slow his vehicle down or he would go to jail. Hagen eventually stopped his car and walked over to Coon.
 
 
 10
 Eventually Coon told Hagen to stand over on the grass and wait. Whether Coon told Hagen at that time that he was going to jail is in dispute.
 
 
 11
 Because Coon was still directing traffic at the intersection, he called his supervisor, Officer R. Dalquest, to ask for assistance. Shortly thereafter, Officer Affalter arrived and spoke with Coon about Hagen.
 
 
 12
 Hagen admits that he was "annoyed" and does not deny that he may have appeared to be extremely agitated and unreasonable to the officers.
 
 
 13
 Affalter told Hagen that if he did not move his car, he was going to jail. He did not move it, so Affalter frisked him and placed handcuffs on him. Hagen claims that while Affalter was frisking him, Affalter injured Hagen's testicles. Affalter admits that he may have inadvertently touched Hagen's testicles, but denies that he intentionally injured Hagen.
 
 
 14
 R. Dalquest arrived on the scene while Hagen was being frisked and handcuffed. After Hagen was handcuffed, he was placed in R. Dalquest's car for transportation.
 
 
 15
 Affalter asserts that probable cause existed for arresting Hagen for interfering with his own duties and with the duties of Coon in directing traffic at the intersection. Coon also asserts probable cause existed to arrest Hagen for disorderly conduct and for obstructing his duty to direct traffic.
 
 
 16
 Hagen was booked through Douglas County for disorderly conduct and obstruction of legal process, and was allowed to phone his attorney while he was being booked. After Hagen had been in custody for less than one hour, without placement in a cell or lockup, he was released on his own recognizance.
 
 
 17
 On November 3, 1986, District Attorney Jim Flory ("Flory") filed a criminal complaint against Hagen in Case No. 86-890 for disorderly conduct, in violation of K.S.A. 21-4101. This complaint was later dismissed by Assistant District Attorney Gerald E. Wells ("Wells") for its possible failure to withstand the scrutiny of a reasonable doubt standard, even though Wells contended that probable cause existed for Hagen's arrest.
 
 
 18
 On February 17, 1987, Flory, with Wells' consent, charged Hagen with obstruction of a police officer in the performance of his duty, in violation of K.S.A. 21-3808. This charge was later dismissed by the Kansas district court for failure to charge an underlying offense to the charge of obstruction; the district court's decision was affirmed by the Kansas Supreme Court in State v. Hagen, 242 Kan. 707, 708, 750 P.2d 403, 405 (1988).
 
 
 19
 On March 8, 1988, Wells filed a third complaint against Hagen, charging him with violation of K.S.A. 8-1503, prohibiting the willful failure to obey the order of a police officer directing traffic. This complaint was later dismissed by the Kansas district court for failure to meet speedy trial mandates. The Defendants-Appellees all deny any involvement with the decision to bring or pursue the second or third criminal complaints.
 
 
 20
 Hagen filed the present action on February 5, 1987, and included Sergeant Donald Dalquest ("D. Dalquest") because, Hagen contends, D. Dalquest used his position as the Lawrence Police Department records officer to preclude Hagen's attorney from obtaining a copy of his criminal history file. D. Dalquest contends and the court below found, however, that D. Dalquest correctly questioned the court order presented by Hagen's attorney regarding the file, because the order was unsigned. Further, D. Dalquest later telephoned the court clerk's office to confirm the order, and sent copies of the criminal history file to Hagen's attorney later that day, at no charge.
 
 
 21
 Finally, Hagen contends that his civil rights were further violated by the Defendants-Appellees when they entered into a "user's agreement" with the chief of police to allow them access to the police report in Hagen's case, after Hagen had filed his civil rights action. But we agree with the court below that the police report is discoverable material, and as such, dissemination of the report to the Defendants-Appellees does not violate Hagen's right to privacy under the United States Constitution.
 
 I.
 Standard of Review
 
 22
 Fed.R.Civ.P. 56(c) provides the trial court's test for the propriety of summary judgment when it states:
 
 
 23
 The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
 
 
 24
 See, Martin v. Bd. of County Comm'rs., 909 F.2d 402, 404 (10th Cir.1990); Osgood v. State Farm Mut. Auto Ins. Co., 848 F.2d 141, 143 (10th Cir.1988); Maughan v. SW Servicing, Inc., 758 F.2d 1381, 1387 (10th Cir.1985).
 
 
 25
 When reviewing a grant of summary judgment by a trial court, an appellate court applies the same standard used by the district court under Fed.R.Civ.P. 56(c). Weir v. Anaconda Co., 773 F.2d 1073, 1079 (10th Cir.1985). The reviewing court must examine the record to determine if any genuine issue of material fact remains, and if not, whether the district court properly applied the substantive law. Franks v. Nimmo, 796 F.2d 1230, 1235 (10th Cir.1986). This review of the record is done in the light most favorable to the nonmoving party. Ewing v. Amoco Oil Co., 823 F.2d 1432, 1437 (10th Cir.1987).
 
 
 26
 The party moving for summary judgment must prove his entitlement thereto beyond a reasonable doubt. Norton v. Liddel, 620 F.2d 1375, 1381 (10th Cir.1980). If a specific, genuine issue of material fact--that is, a fact relevant under the applicable substantive law--remains, summary judgment is precluded. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). When the opposing party presents a fact that he alleges to be material, however, he must make a specific showing on the essential elements of each claim to establish that genuine dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
 
 
 27
 Because the Defendants-Appellees' Motion for Summary Judgment was granted by the district court, we have as the record before us the district court's order granting summary judgment, the transcript of a brief hearing on the motion, and the briefs in support of and in opposition to the motion, together with their supporting documents. We agree with the district court that no genuine issues of material fact appear so as to preclude a grant of summary judgment in favor of the Defendants-Appellees. We further find that Judge Kelly need not have recused himself for holding or expressing the opinions he divulged in the Motion for Summary Judgment Proceeding conducted on February 8, 1990. We affirm.
 
 
 28
 In the court below, Hagen brought a number of claims for relief against the Defendants-Appellees. These were as follows: 1) civil rights violations under 42 U.S.C. §§ 1983, 1985 & 1986; 2) conspiracy to arrest and prosecute in a 42 U.S.C. § 1983 action; 3) malicious prosecution; 4) municipal liability against the City of Lawrence for engaging in a custom, practice, or policy leading to a constitutional rights violation; 5) violation of the First Amendment guarantees of free speech; 6) pendent state tort violations for false arrest, false imprisonment, illegal restraint, outrage, abuse of process, violation of speedy trial rights, libel, slander, and invasion of privacy; and 7) punitive damages demands for reckless or callous indifference to constitutional rights.
 
 
 29
 Each of Hagen's claims was either specifically addressed or deemed irrelevant by the district court. Because we must review the district court's application of the law to the material facts, we shall explore the legal theories of probable cause, qualified immunity, and recusal for bias.
 
 II.
 Probable Cause
 
 30
 Probable cause to arrest someone exists where the facts and circumstances known to the law enforcement official at the time of arrest are such that a prudent person would believe that an offense has been or is being committed. Brierley v. Schoenfeld, 781 F.2d 838, 841 n. 1 (10th Cir.1986); Karr v. Smith, 774 F.2d 1029, 1031 (10th Cir.1985).
 
 
 31
 In this appeal, Hagen argues that sufficient probable cause did not exist for his arrest, and that the federal district court either ignored material facts or improperly weighed the evidence before it to reach the conclusion that probable cause existed. Hagen attempts to further bolster his argument for absence of probable cause by pointing to the fact that all three criminal complaints against him were eventually dismissed. We do not find Hagen's arguments persuasive.
 
 
 32
 Without resolving any disputed facts, we note at a minimum that Officer Coon observed Hagen's reaction to the traffic detour and was the object of Hagen's expletives during the Band Day Parade. Coon further witnessed Hagen's actions with his car, which Coon reasonably interpreted to be reckless. When Officer Affalter arrived, Coon related Hagen's previous behavior to Affalter, and Affalter witnessed Hagen's behavior toward him and failure to move his car, which understandably led Affalter to place Hagen under arrest.
 
 
 33
 Any misjudgment and carelessness exercised by the District Attorney's office in this matter are entirely distinct from the behavior and judgment of the police officers at the Band Day incident. Any reasonable police officer would have reacted to Hagen the way that Coon, Affalter and R. Dalquest did. We find that probable cause existed to arrest Hagen. Additionally, we find that Hagen's argument about the identity of the arresting officer is a "red herring" and is not a genuine issue of material fact. It is undisputed that Affalter was the arresting officer.
 
 III.
 Municipal Liability
 
 34
 The City of Lawrence is also a Defendant-Appellee herein because Hagen contends that the City violated 42 U.S.C. § 1983 by failing to properly train its law enforcement officials, and by maintaining a custom, practice, or policy that offended Hagen's constitutional rights. Hagen has not substantiated those contentions. See, Monell v. New York City Dep't. of Social Servs., 436 U.S. 658, 691 (1978).
 
 
 35
 Further, we agree with the court below that liability under respondeat superior does not attach when a municipality is sued for the actions of its employees under 42 U.S.C. § 1983. Canton v. Harris, 489 U.S. 378, 385 (1989). Hagen has presented no viable evidence of a custom, practice, or policy on the part of the City of Lawrence to harass ordinary citizens, or to deprive those citizens of their constitutional rights.
 
 
 36
 Additionally, no evidence exists to suggest that the City has failed to properly train its law enforcement officials. As we stated above, abundant evidence exists that the officers had probable cause to restrain and arrest Hagen at the Band Day incident. Hence, no municipal liability shall attach to the City of Lawrence for the alleged violation of Hagen's constitutional rights.
 
 IV.
 Qualified Immunity
 
 37
 The doctrine of qualified immunity shields government officials from personal liability unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Hagen must prove that his rights were "clearly established," and how the actions of the Defendants-Appellees allegedly violated those rights. Rozek v. Topolnicki, 865 F.2d 1154, 1157 (10th Cir.1989); Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 645-46 (10th Cir.1988). In fact, Hagen's rights must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).
 
 
 38
 The United States District Court for the District of Kansas held, in a recent illegal arrest case, that "officers will lose the shield of immunity only if reasonable officers could not have believed that the arrest was based on probable cause, in light of clearly established law and the information possessed by the officer." Mann v. Purcell, 718 F.Supp. 868, 875 (D.Kan.1989) ( citing, Jones v. City and County of Denver, Colorado, 854 F.2d 1206, 1210 (10th Cir.1988)).
 
 
 39
 In addition to holding that probable cause in fact existed for Hagen's arrest, we find that the officers sued are immune from suit based upon the doctrine of qualified immunity. It is unnecessary to discuss the merits of Hagen's claims against the individual Defendants-Appellees. Summary judgment is therefore properly granted against Hagen with regard to the individual Defendants-Appellees.
 
 V.
 Recusal for Bias
 
 40
 The final issue that Hagen presents for review is the alleged bias or prejudice demonstrated against him by Judge Kelly in the district court below. This contention is without merit, as a district judge may voice an opinion about a party, an issue, or the performance of counsel in a case before him, as long as it is soundly based. See, Hale v. Firestone Tire & Rubber Co., 756 F.2d 1322, 1329 (8th Cir.1985); In re United States, 666 F.2d 690, 695 (1st Cir.1981).
 
 
 41
 Hagen's argument rests upon the comments made by Judge Kelly in the February 8, 1990 Summary Judgment Proceeding, which referred to the "insolence" and "arrogance" displayed by Hagen during the Band Day incident. Judge Kelly also referred to Hagen's counsel in this hearing by opining that she should have engaged in some "straight talk" with Hagen instead of filing the present case. He might have added: "Volenti non fit injuria."
 
 
 42
 A judge must recuse himself, sua sponte, only when a reasonable person, measured under an objective standard, knowing all of the underlying facts that relate to recusal, would significantly doubt the judge's impartiality. 28 U.S.C. § 455(a). See, also, United States v. Gigax, 605 F.2d 507, 511 (10th Cir.1979). Recusal must be based upon extrajudicial bias. United States v. Prichard, 875 F.2d 789, 791 (10th Cir.1989); United States v. Bray, 546 F.2d 851, 859 (10th Cir.1976). Extrajudicial bias refers to that which the judge acquires on some basis other than what the judge learned from his participation in the case. United States v. Grinnell Corp., 384 U.S. 563, 580-83 (1966).
 
 
 43
 In examining the transcript from the February 8, 1990 Summary Judgment Proceeding, we are persuaded that any epithets uttered by Judge Kelly sprang from his participation in the case itself. Judge Kelly carefully and impartially examined the facts of this case, and applied the substantive law to them to reach his result. His criticisms of Mr. Hagen are well-founded in the record.
 
 Conclusion
 
 44
 In conclusion, we find that summary judgment was properly granted in the district court. The individual Defendants-Appellees had probable cause to arrest Hagen, and are therefore not liable to Hagen by virtue of the doctrine of qualified immunity. Further, the City of Lawrence owes no municipal liability to Hagen for its own customs or policies, or for the actions of its law enforcement officials. Finally, we hold that Judge Kelly in the court below was under no obligation to recuse himself for making statements, on the record, about Hagen and his counsel.
 
 
 45
 AFFIRMED.
 
 
 
 *
 Honorable Wayne E. Alley, United States District Judge for the Western District of Oklahoma, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Hagen admitted that although he knew Mississippi was a north-south street west of Vermont, and although Coon was pointing west, Hagen said he thought that Coon was telling him to go to the State of Mississippi. Query! There is no reason to assess the sincerity of this, however