974 F.2d 1345
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Herbert TEPPER and Judith Hilbun Tepper, Plaintiffs-Appellants,
v.
R. Paul VAN DAM, individually and in his capacity as
Attorney General of the State of Utah, Linda Luinstra,
individually, in her capacity as Assistant Attorney General
and in her capacity as Chief of the Human Services Division,
Kenneth Stettler, individually and in his capacity as
Licensing Specialist of the State of Utah Department of
Social Services, John Does 1 through 30, Defendants-Appellees.
 No. 91-4084.
 United States Court of Appeals, Tenth Circuit.
 Sept. 9, 1992.
 
 Before EBEL, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and EISELE, Senior District Judge.*
 ORDER AND JUDGMENT**
 McWILLIAMS, Senior Circuit Judge.
 
 
 1
 On December 18, 1990, Herbert Tepper and his wife, Judith Tepper, brought suit in the United States District Court for the District of Utah against the following: (1) R. Paul Van Dam, the attorney general for Utah; (2) Linda Luinstra, an assistant attorney general for Utah, serving as Chief of the Human Services Department for Utah; (3) Kenneth Stettler, a licensing specialist in the Department of Social Services for Utah; and (4) 30 John Does, all of whom were said to be either agents or officials for Utah.
 
 
 2
 On or about January 28, 1991, the defendants filed a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, which motion was supported by a memorandum which is not included in the record on appeal. The plaintiffs filed a memorandum in opposition to the defendants' motion to dismiss, which is a part of the record on appeal. After hearing, the district court on May 3, 1991, granted defendants' motion to dismiss, holding that the defendants were "shielded by qualified immunity." The Teppers now appeal the judgment of the district court dismissing their action with prejudice.
 
 
 3
 The action having been dismissed on a 12(b) motion (it would appear that the 12(b) motion was in reality a 12(b)(6) motion, i.e., failure to state a claim upon which relief could be granted), the allegations in the Tepper complaint become all important. From the complaint we learn that Herbert and Judith Tepper are residents and citizens of California, and that the defendants named in the complaint are all officials of the State of Utah. Jurisdiction was based on diversity of citizenship, 28 U.S.C. § 1332 and the Civil Rights Act, 42 U.S.C. § 1983.
 
 
 4
 The Teppers alleged in their complaint that in July, 1990, they enrolled their son, Jordan, in a wilderness training program for troubled teens run by a Delaware corporation, Challenger Foundation II, which operated a camp in southern Utah. In this regard, the Teppers alleged that for an "enrollment fee" they granted "physical control" of their son to Challenger Foundation II with the hope and expectation that the "rigorous and unusual methods" used by Challenger Foundation II would benefit their son.
 
 
 5
 The Teppers went on to allege in their complaint that the defendants, pretending to act in their respective offices for the State of Utah, conspired with each other to put Challenger Foundation II out of business, and that their efforts culminated on August 23, 1990, when they filed in a state court in Utah a civil action on behalf of the State of Utah against Challenger Foundation II wherein the state sought to enjoin Challenger Foundation II's operation in Utah on the ground that such was not in compliance with Utah's child welfare and licensing laws. The Teppers alleged, inter alia, that they were not given notice of the impending state action, that the defendants violated Teppers' custodial rights, that their son's "behavioral program" was interrupted, and that the end result of the state's action against Challenger Foundation II caused it to cease operation and Jordan was returned to his home in California.
 
 
 6
 Teppers' first claim for relief was based on an alleged violation of rights secured them by the United States Constitution and laws of the United States by the several defendants acting under the color of state law. A second claim for relief charged the defendants with conspiring to deprive the Teppers of their civil rights. The third, and last, claim for relief charged the defendants with violating rights secured them by the Fifth, Ninth and Fourteenth Amendments to the Constitution. 42 U.S.C. § 1983.
 
 
 7
 Pueblo Neighborhood Health Centers v. Losavio, 847 F.2d 642 (10th Cir.1988), has particular present pertinancy. In that case at pp. 645-46, we spoke of qualified immunity for government officials as follows:
 
 
 8
 While qualified immunity is an affirmative defense, it cannot be analogized to other affirmative defenses because of the interests implicated in suits against governmental officials. Unlike other affirmative defenses, qualified immunity not only shields a defendant from liability, but is also intended to protect the defendant from the burdens associated with trial. Furthermore, this court has recognized that qualified immunity is a defense of a different character by allowing appeals from interlocutory orders denying qualified immunity based summary judgment motions.
 
 
 9
 Because the defendant's status as a governmental official or "agent" is an essential element of a section 1983 claim, the potential applicability of the qualified immunity defense will usually appear in the complaint. The complaint should include "all of the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." Thus, a defendant could, prior to filing an affirmative defense, challenge the complaint under Fed.R.Civ.P. 12(b)(6) on the ground that he or she is entitled to qualified immunity because the pleaded facts failed to show that his or her conduct violated clearly established law of which a reasonable person would have known. Similarly, the defendant could raise the immunity issue in a motion for summary judgment. In either case, once the defense has been raised, the court must allow the plaintiff the limited opportunity allowed in Fed.R.Civ.P. 12(b)(6) and 46 to come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred. Unless such a showing is made, the defendant prevails. If the plaintiff has identified the clearly established law and the conduct that violated the law, the defendant as the movant in a motion for summary judgment bears the normal burden of showing that no material issues of fact remain that would defeat his or claim of qualified immunity (emphasis added) (citations omitted).
 
 
 10
 In granting the defendants' motion to dismiss, the district court held, in effect, that the pleaded facts in the Teppers' complaint were insufficient to show that the defendants' alleged conduct violated clearly established statutory or constitutional rights of the Teppers which a reasonable person would have known. In this regard, see Harlow v. Fitzgerald, 457 U.S. 800 (1982), where the Supreme Court spoke as follows:
 
 
 11
 [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.
 
 
 12
 We are in accord with the district court's analysis of the Teppers' complaint. About the only overt act of the defendants set forth in the complaint which could have conceivably affected the Teppers and violated any of their claimed rights is that the defendants instituted an action on behalf of the State of Utah against Challenger Foundation II. The complaint itself does not tell us very much about the nature of the state court proceeding. However, at the hearing on the motion to dismiss, a copy of an order entered in the state court proceeding was given the district court without objection. The order showed that the state district court on August 30, 1990, denied the State of Utah's request for a preliminary injunction, but at the same time observed that the State of Utah might well ultimately prevail on its cause of action and ordered Challenger Foundation II to post a $100,000 bond to demonstrate its financial stability, which it failed to do. Counsel agreed that shortly thereafter Challenger Foundation II went into bankruptcy and closed its camp and returned its enrollees to their respective homes, and that there were no further state proceedings against Challenger Foundation II.
 
 
 13
 We agree with the district court that the complaint itself is insufficient to withstand a 12(b)(6) motion. It does not articulate with sufficient specificity the clearly established constitutional rights involved or how the conduct of the defendants violated those rights. We are not impressed with Teppers' argument that their constitutionally protected "custodial rights" were somehow impacted by the defendants. From the complaint it would appear that the Teppers' had themselves voluntarily surrendered "control," if not "temporary custody," to Challenger Foundation II. The only overt act of the defendants directed at Jordan, the son, set forth in the complaint was that, pursuant to subpoena, Jordan and several other enrollees were brought from the camp to a state court, apparently by Challenger Foundation II employees, where Jordan and the others were interviewed for a short period of time and were then returned to camp by the employees of Challenger Foundation II. The complaint fails to state how defendants' actions interfered with any custodial rights of Teppers.
 
 
 14
 The Teppers also argue that the district court erred in dismissing their action "with prejudice" and that any dismissal should have been "without prejudice" to the end that they would have opportunity to file an amended complaint. Under the circumstances, we find no error. Although it was not an issue on appeal, we note that in Brierley v. Schoenfeld, 781 F.2d 838 (10th Cir.1986), we affirmed a district court's order dismissing with prejudice a civil rights suit under 42 U.S.C. § 1983. In Okusami v. Psychiatric Institute of Washington, 959 F.2d 1062, 1066 (D.C.Cir.1992), an antitrust suit, the District of Columbia Circuit held that the dismissal of an action pursuant to Rule 12(b)(6) is "a resolution on the merits and is ordinarily prejudicial." In Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991), a securities fraud action, the Second Circuit held that a 12(b)(6) dismissal with prejudice was proper with the comment that "where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."
 
 
 15
 As indicated, the defendants' motion to dismiss was filed on January 28, 1991. The hearing on that motion was not held until April 18, 1991. During the intervening time the Teppers never indicated to the district court that they desired to file an amended complaint. Further, in their memorandum in opposition to defendants' motion to dismiss, the Teppers did not indicate any desire to replead, and instead stated that "[s]uccinctly put, Teppers' argument is that they have the constitutional right to raise their children as they see fit without interference from individuals claiming to act under color of law." In thus arguing, the Teppers apparently were of the view that the State of Utah had no legitimate interest in controlling and licensing schools such as Challenger Foundation II, which, as mentioned, operated a program designed to rehabilitate troubled teenagers. And then even after the district court had dismissed their action, the Teppers did not ask leave of the district court to file an amended complaint. Nor have they suggested to this court what other facts they could allege which would put their cause of action beyond the reach of a 12(b)(6) motion.
 
 
 16
 Judgment affirmed.
 
 
 
 *
 Honorable Garnett Thomas Eisele, Senior District Judge for the District of Arkansas
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3